## LA MARCHE v. UNITED STATES.

Circuit Court of Appeals, Ninth Circuit.
October 15, 1928.

No. 5400.

Ralph A. Horr and Ben A. Maslan, both of Seattle, Wash., for plaintiff in error.

Roy C. Fox, U. S. Atty., and E. J. Farley, Asst. U. S. Atty., both of Spokane, Wash. (C. L. Dawson, Atty. U. S. Veterans' Bureau, of Washington, D. C., and Lester E. Pope, Regional Atty. U. S. Veterans' Bureau, of Seattle, Wash., of counsel), for the United States.

Before RUDKIN, DIETRICH, and HUNT, Circuit Judges.

RUDKIN, Circuit Judge. This is a writ of error to review a judgment for the defendant on a verdict directed by the court. The plaintiff in error entered the military service of the United States March 20, 1918, and was honorably discharged at Washington, D. C., July 16, 1919. While in the military service he applied for and received the customary war risk insurance policy in the sum of $10,000, which was permitted to lapse

on July 31, 1919, for nonpayment of premiums. There was testimony tending to show that at the time of his discharge the plaintiff in error was examined by army doctors and was informed that he was suffering from shell shock and that his rating would be 10 per cent. He was then treated for some affliction of the nose, but begged off from further treatment, stating that he felt good and was anxious to return home. Soon after his discharge, he visited his mother at Eau Claire, Wis., for a couple of days. On the trip from Washington and during his visit at Eau Claire, he was in a nervous condition, unable to sleep, and on one occasion fainted while in a store with his mother. His condition was about the same on the trip from Eau Claire to Parker, Wash., whither he went to resume his employment with the Northern Pacific Railway Company, where he had been employed at the time of his enlistment. The date of his visit at Eau Claire and his subsequent trip West is not disclosed by the record, but it was some time during the period between the date of his discharge, July 16, and the date of the expiration of his insurance, July 31. On August 1, 1919, the day after his insurance expired, he began work for the railway company, and four days later, after complaining each day of inability to sleep and nervousness, he was suddenly seized with violent pains throughout his body and was taken to the hospital at Yakima. About twelve days later he was removed to the hospital at Tacoma, where he remained until some time in December. He was then removed to the government hospital in Chicago, where he remained for about a year. During his stay at the hospital in Chicago he was treated for nervousness and an operation was performed on his hip. After his discharge from the Chicago hospital, he resumed work for the railway company at Pasco, Wash., but was off duty the major part of the time because of illness and while on duty a considerable part of his work was performed gratuitously by his fellow employés. It seems to be conceded that his present condition results from an injury to the hip. The only testimony as to how, when, or where this injury occurred was to the effect that while under shell fire in France he was rendered unconscious, and following this was subject to nervousness and was confined frequently in hospitals suffering from a nervous condition and pains throughout his body. After one such confinement, which lasted for about three weeks, he could only walk with the aid of a cane.

The complaint alleged that while in the military service of the United States the plaintiff in error contracted ankylosis of the right hip joint, together with traumatic neurosis, and from said disability there has developed, as an approximate outgrowth, hysteria with attacks; ankylosis bony, complete, right hip, postoperative; cicatrix right hip, postoperative, atrophy of muscles right buttock and right thigh; scolosis, dorsal compensating; and there was testimony tending to prove that this condition was caused by an injury to the hip and an ensuing operation. In directing a verdict for the defendant the court below ruled that the testimony was sufficient to warrant a finding of total permanent disability and that such disability resulted from an injury to the hip, but that it was a mere matter of guesswork and speculation as to when or how the injury to the hip was incurred.

▮ We fully agree with the court that the testimony was sufficient on the question of total permanent disability, and that the question as to when, where, or how the injury to the hip was incurred was largely a matter of guesswork and speculation; but the burden was only on the plaintiff to prove total permanent disability, and that such disability arose during the life of the policy. Mere inability on his part to prove the exact time and place of the injury to the hip was not fatal to his case if the jury was warranted in finding from the testimony that the injury and the accompanying disability occurred and existed during the life of the policy, and we think the testimony was sufficient to warrant such a finding. After August 4, 1919, the plaintiff in error was confined in hospitals for nearly a year and a half, and there is ample warrant for a finding of total permanent disability from and after that date. We think also the testimony would warrant a finding of total permanent disability at a much earlier date and while the policy was in effect. His condition and symptoms after August 4, 1919, did not differ materially from his condition and symptoms prior to that date, and if conditions existing on and after August 4 were attributable to the injury to the hip, might not the jury well find that similar conditions existing prior to that date arose from the same cause.

▮ There was no evidence to compel a finding that the plaintiff in error received any injury between the date of the expiration of the policy and August 4, if indeed the testimony would warrant such a finding. While in the hospital at Yakima or Tacoma the

830

plaintiff in error claimed that he was injured by a fall from a box car while in the employ of the railway company at Parker, just before entering the hospital at Yakima; but a few days later he admitted to the claim agent of the railway company that this claim was false and was made solely for the purpose of having the railway company pay his hospital bills and expenses, and he testified to the same effect at the trial. The surgeon who examined him at the hospital at Yakima found no evidence of any recent injury, so that whether he in fact received such an injury was a question for the jury, and if he did not his false claim was immaterial, except in so far as it might affect his credibility as a witness. The same may be said of a certificate made by the plaintiff in error some considerable time after his policy had expired, to the effect that his condition was the same then as when the policy lapsed.

From a full consideration of all the testimony, we are therefore of opinion that the court erred in directing a verdict for the defendant, and for this error the judgment is reversed and the cause is remanded for a new trial.