## UNITED STATES v. McPHEE.

Circuit Court of Appeals, Ninth Circuit.
March 11, 1929.

No. 5635.

Anthony Savage, U. S. Atty., and Tom De' Wolfe, Asst. U. S. Atty., both of Seattle, Wash. (Wm. Wolff Smith, Gen. Counsel, U. S. Veterans' Bureau, and C. L. Dawson, Atty., U. S. Veterans' Bureau, both of Washington, D. C., and Lester E. Pope, Regional Atty., U. S. Veterans' Bureau, of Seattle, Wash., of counsel), for the United States.

W. G. Beardslee, of Seattle, Wash., and Alvin Gerlack, of San Francisco, Cal., for appellee.

Before RUDKIN and DIETRICH, Circuit Judges, and BEAN, District Judge.

BEAN, District Judge. █ This is an appeal from a judgment in favor of the appellee in an action on a war risk insurance policy. The appellee moved this court for an order requiring the court below to send up its instructions to the jury. The instructions of a trial court are not a part of the record unless made so by bill of exceptions. That was not done in this case. This court has therefore no authority to make the order requested. Bennett v. Riverland Co. (C. C. A.) 15 F.(2d) 491.

The appellee entered the naval service of the United States on January 3, 1918, and was honorably discharged on September 26, 1919. After entering the service he applied for and there was issued to him a war risk insurance policy for $5,000, payable in monthly installments in case he should become totally and permanently disabled while it was in force. The premiums were payable monthly. They were paid up to and including the month of September, and under the regulations of the Department, in pursuance of law, the next premium became due and payable on the 1st day of October, and the assured had the entire month in which to make such payment as "a grace period"; but if the premium was not paid before the expiration of such grace period the insurance would lapse and terminate. No payment of the premium on the policy was made after appellee's discharge, and therefore the policy lapsed and terminated at midnight on October 31st.

█ At the close of the testimony appellant moved for a directed verdict in its favor on the "ground that a sufficient showing has not been made to establish a prima facie case, in view of the facts that according to the evidence submitted by the plaintiff himself, he was discharged on or about September 22, 1919, and paid no premiums on his insurance after discharge; and that the first evidence of disability was in January, 1920, long after the insurance had lapsed." This motion was overruled, and the case submitted to the jury, and in due time it returned a verdict as follows: "We the jury in the above entitled cause find for the plaintiff and fix the date of the beginning of his permanent and total disability from November 1, 1919."

Based on this verdict judgment was rendered in favor of the appellee.

It is manifest that the verdict does not support the judgment. The sole question of fact in the case was whether the plaintiff was totally and permanently disabled during the life of the policy. The policy expired at midnight on October 31, 1919, for failure to pay the premium thereon. To enable the appellee to recover thereon, it was incumbent upon him to show that he was totally and permanently disabled at or before that time. The jury found that the beginning of his disability was November 1st, and that was after the policy expired.

It is suggested that the finding of the jury of the date when the appellee's total and permanent disability commenced should be disregarded and treated as surplusage, but it was on the crucial question in the case. It is in the nature of a special verdict, and one which controlled the general findings in fa-

vor of the appellee. For these reasons we are constrained to reverse this judgment.

In view, however, of another trial, we deem it proper to say that in our judgment the motion for a directed verdict was ample to challenge the sufficiency of the evidence, and should have been sustained.

We can find no evidence in the record showing, or tending to show, that the appellee was totally and permanently disabled at any time before the policy expired. The evidence is that some time between July and September of 1919, while on a voyage from New York to Bremerton, the appellee slipped and bumped his shoulder on the bridge wall while he was tightening a manhole plate, but he testified that: "I did not report to the sickbay. My shoulder didn't bother me for quite sometime. I never told any one in the service about it." At the time of his discharge, he signed a certificate stating that, "I have received no injury entitling me to compensation under the war risk insurance act."

Immediately after his discharge he went to work as a timekeeper at a sawmill at a salary of $100 a month, and continued to so work uninterruptedly until January, 1920. He says that he noticed some stiffness and pain in his shoulder in October or November, but it did not disable him, nor did he consult a physician with reference thereto. Some time in January, 1920, he became ill and called a physician, who at first diagnosed his trouble as influenza; but it subsequently proved to be smallpox. Soon after he recovered from the attack of smallpox, he complained of pain in his shoulder, and upon examination by his physician it was discovered that it was infected, and he was suffering from osteomyelitis. The patient was taken to the hospital, the shoulder operated upon at that time, and several times later. It is not even in evidence that the infection of the shoulder was attributable to the bump which appellee received while in service. Indeed, Dr. Eickenbury, a specialist in bone surgery, testified that: "An injury of itself would not cause this osteomyelitis. An infection on top of an injury would do it; I mean an injury following infection might. It might be due to any one of many organisms. The osteomyelitis in this case like osteomyelitis in any other case is caused by an infection in the bone. An injury itself will not cause infection. Infection refers to the entrance of an organism that causes osteomyelitis. * * * The general idea is that it is for some reason a point of least resistance. An injury will lessen the resistance so that an infection may lodge there. Any infection lodges at the point of least resistance." Dr. Buckner, who operated on the appellee in 1924, said that it was probable that the infection was due to the smallpox.

Total and permanent disability within the meaning of a war risk insurance policy does not mean absolute incapacity to do any work at all. But there must be such impairment of capacity as to render it impossible for the assured to follow continuously some substantially gainful occupation, and this must occur during the life of the contract.

War risk insurance is not a gratuity, but an agreement by the government, on certain conditions, to pay the assured certain sums per month if he becomes totally and permanently disabled while the contract of insurance is in force. The burden is on one suing on such a contract to show that he was in fact permanently and totally disabled, at some time before the contract lapsed.

Judgment is reversed, and the cause remanded for new trial.