## UNITED STATES v. COLE.
### No. 5639.

Circuit Court of Appeals, Sixth Circuit.
Nov. 7, 1930.

Frank Hier, of Cincinnati, Ohio, and D. G. Arnold, of Washington, D. C. (Haveth E. Mau and Frank Hier, both of Cincinnati, Ohio, J. O'C. Roberts, James T. Brady, and

**340**

Lawrence A. Lawlor, all of Washington, D. C., on the brief), for the United States.

E. L. Mikesell, of Dayton, Ohio (R. N. Brumbaugh, of Dayton, Ohio, on the brief), for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKS, Circuit Judge.

■■■Suit upon an insurance contract issued under the War Risk Insurance Act (40 Stat. 398). Verdict and judgment for plaintiff. Defendant appealed.

Appellee enlisted in the Army July 20, 1918, and was discharged March 26, 1919. The insurance certificate was in force from August 1, 1918, until midnight May 1, 1919, when it lapsed for failure to pay the monthly premium. The issue was whether during its life appellee became totally and permanently disabled. Appellant challenges the denial of motions for a directed verdict. We think they should have been sustained.

On September 27, 1918, appellee was exposed to an attack of mustard gas. There is evidence tending to show that from that date his eyesight gradually failed until he became permanently and totally blind in April, 1923, but, this having occurred substantially four years after appellee's insurance had lapsed, he cannot invoke the aid of Regulation No. 4, part (b), paragraphs VII and IV, Clause (a), which regulation was adopted in the same form as it appears in section 202 of the World War Veterans' Act 1924 as amended (title 38, c. 10, part 2, § 473, U. S. Code [38 USCA § 473]), governing compensation. This regulation awards a rating of total permanent disability to a claimant who has lost the sight of both eyes, but the disability must arise during the life of the policy, and the burden of proof thereof was upon appellee. La Marche v. U. S., 28 F.(2d) 828, 829 (C. C. A. 9); U. S. v. McPhee, 31 F.(2d) 243, 244 (C. C. A. 9); Wood v. U. S. (D. C.) 28 F.(2d) 771, 773; Bean v. U. S. (D. C.) 7 F.(2d) 393, 396; Tomlinson v. U. S. (D. C.) 18 F.(2d) 795, 796. The government grants insurance only upon the payment of premiums (title 38, c. 10, part 3, § 511, U. S. Code [38 USCA § 511]), and the regulations of the Director of the Bureau, subject to the general direction of the Secretary of the Treasury and promulgated pursuant to the act, and having the force and effect of law (White v. U. S., 270 U. S. 175, 180, 46 S. Ct. 274, 70 L. Ed. 530; U. S. v. Grimaud, 220 U. S. 506, 521, 31 S. Ct. 480,

55 L. Ed. 563; Sawyer v. U. S., 10 F.(2d) 416, 423 [C. C. A. 2]), provide: "If any premium be not paid * * * when due or within the days of grace, this insurance shall immediately terminate. * * *"

Appellee was compelled therefore to rely upon clause (b) of the above-cited regulation which awards a rating of permanent total disability "when from the evidence submitted, it is determined that a person has suffered an impairment of mind or body of a degree which would render him incapable of following continuously a substantially gainful occupation and it furthermore appears reasonably certain that such degree of disability will continue throughout the life of the disabled person." This regulation has been construed in U. S. v. Acker, 35 F.(2d) 646, 648 (C. C. A. 5), to mean in effect that one is totally and permanently disabled if he cannot continuously follow a substantially gainful occupation "in the exercise of ordinary care and prudence" and in U. S. v. Eliasson, 20 F.(2d) 821, 823 (C. C. A. 9), "without seriously impairing his health." See, also, U. S. v. Cox, 24 F.(2d) 944, 946 (C. C. A. 5).

The uncontroverted evidence is that appellee had contracted syphilis about 1908. He had had no actual eye trouble before he was "gassed," but there is substantial evidence tending to show that his eyes became seriously irritated and inflamed from the effect of the gas attack, that his lungs were somewhat affected, and that, although he was hospitalized and otherwise medically treated, his powers of resistance became so weakened that the syphilitic poison thus unleashed gradually and progressively made inroads upon and destroyed the optic nerves. But appellee's difficulty is that there is no substantial or sufficient evidence to justify the conclusion that he became totally and permanently disabled from failing eyesight, in the contemplation of clause (b) of the regulation cited, during the life of the policy; i. e., before his insurance contract expired on May 1, 1919. Appellee's discharge makes no mention of his physical condition except that he was gassed in the service. He was discharged at Louisville, Ky., March 26, 1919, and he testified that some two or three weeks thereafter he resumed his employment with the Liggett & Myers Tobacco Manufacturing Company, where he had worked prior to his enlistment; that he was put at "stemming" cigarette tobacco, that is, at stripping the leaves from the stalk; that the condition of his eyes prevented him from working regularly; and that his earning power based on

piecework gradually declined. However, his cross-examination convinces that he has no definite recollection of just when, with reference to the lapse of his insurance, he went to work or just what wages he made or when his wages began to decline or how much time he lost from labor. He testified:

"I didn't take no record, I didn't care to keep my own time but I know I was off from my work. Neither can I state the first time I was off from work after my discharge and started working for the Liggett Tobacco Co. I never kept the time. You will have to get my working record to get that time. I didn't keep my own time, they had a time-keeper to keep the time, the firm did."

The "working record" was not placed in evidence nor was the timekeeper introduced as a witness, and no explanation was given for the absence of either. Appellee's effort to clear up this uncertainty was limited to offering the testimony of Landis, his foreman, and this met with no better success except as to the matter of wages. Landis thought appellee made about $15 a week, at piecework. Appellee further testified that his decreased wages were due to time lost in attending a public hospital for eye trouble on Tuesdays and Fridays, but the record is clear that he neither consulted a physician nor attended a hospital until 1923, shortly before he became totally blind. He gave up his job with the Tobacco Company in the spring of 1923 on account of his blindness.

For lack of any substantial evidence from plaintiff himself or any reasonable inference that before he allowed his insurance to lapse his vision had become so impaired that he could not without detriment continue successfully in his occupation, the case was peculiarly one for expert medical testimony. There should have been some competent opinion evidence from skilled oculists or physicians, definite in its nature, at least tending to show that appellee's affliction had progressed to the extent of total permanent disability within the life of the insurance contract. Appellee introduced no such evidence. Hardy-Burlingham Mining Co. v. Baker, 10 F.(2d) 277, 280 (C. C. A. 6). Appellant introduced the testimony of four physicians, but they were neither examined nor cross-examined upon this vital point. For this deficiency in proof of the determinative feature of the case, and which may or may not be supplied upon another trial, the judgment is reversed. Small Co. v. Lamborn & Co., 267 U. S. 248, 254, 45 S. Ct. 300, 69 L. Ed. 597; Hardy-Burlingham Mining Co. v. Baker, supra; C., M. & St. P. Ry. Co. v. Coogan, 271 U. S. 472, 478, 46 S. Ct. 564, 70 L. Ed. 1041; Davlin v. Henry Ford & Son, Inc., 20 F.(2d) 317, 319 (C. C. A. 6).

Assuming that the syphilitic poison or the mustard gas either separately or in combination was within the life of the contract the originating cause of appellee's blindness, it cannot logically follow that total and permanent disability occurred within this same period. The atrophy of the optic nerves, like many other nervous diseases, was progressive, and the rapidity of its course from cause to effect was not a matter of inference, but rather of evidence, to be determined upon a consideration of all attending facts and circumstances. The insurance protected against disability during its term, not against casualty or disease, and appellant can be held only to the extent of its contract. Birmingham v. U. S., 4 F.(2d) 508, 509 (C. C. A. 8); U. S. v. McPhee, supra. See, also, White v. U. S., supra; Helmholz v. Horst, 294 F. 417, 421 (C. C. A. 6).

■■ There was no error in the admission of appellee's Exhibits H and I. These exhibits consisted of two reports of physical examinations of appellee each dated April 30, 1923, and signed by physicians of the Bureau. Only those parts of the reports which gave specific findings of fact were permitted in evidence. The examinations were made under the authority of the Director (title 38, c. 10, § 426, U. S. Code [38 USCA § 426]), and were taken from the Bureau's files pertaining to appellee. It is insisted that these reports are (1) confidential and (2) hearsay. We cannot agree. They are not confidential or privileged when required to be produced in any suit or proceeding pending in the United States court (title 38, c. 10, § 456, clause (b), U. S. Code, 38 US CA § 456(b); Gonzalez v. U. S. [D. C.] 298 F. 1003), and, in fact, no privilege was claimed for them in the lower court. Further, we regard these reports as exceptions to the hearsay rule. They were made by the examining physicians under the sanction of official duty and as and for a permanent record of specific facts to be kept in the files of the Bureau. See Evanston v. Gunn, 99 U. S. 660, 666, 25 L. Ed. 306; White v. U. S., 164 U. S. 100, 104, 17 S. Ct. 38, 41 L. Ed. 365; McGovern v. U. S. (D. C.) 294 F. 108, 109, affirmed by the Circuit Court of Appeals, 299 F. 302 (C. C. A. 1); Runkle v. U. S., 42 F.(2d) 804, 806 (C. C. A. 10); Heike v. U. S., 192 F. 83, 94 (C. C. A. 2); In re Hirsch (C. C.) 74 F. 928, 930; Mc-

Inerney v. U. S. (C. C. A.) 143 F. 729, 736; Greenleaf on Ev. (12th Ed.) Vol. 1, § 484, p. 529; Elliott on Ev., vol. 1, p. 505, § 405; Jones on Ev. (2d Ed.) p. 647, § 509.

In addition, these reports were of examinations made of appellee four years, lacking one day, after the lapse of his insurance contract. They shed little light upon the physical condition of appellee during the life of the contract. If they revealed anything materially important, it was that, at the time they bear date, April 30, 1923, appellee was blind, a fact otherwise abundantly proven and hardly denied. Their admission in any event constituted no material or prejudicial error for which a reversal is authorized. Title 28, c. 10, § 391, U. S. Code (28 USCA § 391); Holmes v. Goldsmith, 147 U. S. 150, 164, 13 S. Ct. 288, 37 L. Ed. 118; Hinckley v. Pittsburgh Bessemer Steel Co., 121 U. S. 264, 278, 7 S. Ct. 875, 30 L. Ed. 967; Lancaster v. Collins, 115 U. S. 222, 227, 6 S. Ct. 33, 29 L. Ed. 373.

The remaining assignment urged was the exclusion of appellant's Exhibit 3.[1] We see no reason for any distinction between this exhibit and appellee's Exhibits H and I. They were all certificates from medical officers, and were all produced from appellee's file in the Bureau. This file was properly certified. Exhibit C is in substance and effect that appellee was given a careful physical examination by the surgeon nine days before his discharge, and that no physical defects were discovered. Upon the same reasons given for the admission of appellee's Exhibits H and I, we think it was error to exclude appellant's Exhibit 3.

Judgment reversed.

---

[1] Certificate of Examining Surgeon. I certify that: The soldier named above has this day been given a careful physical examination, and it is found that he is physically and mentally sound. (Signed) Jules L. Bierach, Capt. C. U., U. S. Army. Camp Zachary Taylor, Ky., March 17, 1919.