## BARTEE v. UNITED STATES.
### No. 6045.

Circuit Court of Appeals, Sixth Circuit.
June 27, 1932.

HICKENLOOPER, Circuit Judge, dissenting.

George J. Coleman, of Memphis, Tenn., for appellant.

Bailey Walsh, of Memphis, Tenn. (Dwayne D. Maddox, of Memphis, Tenn., on the brief), for the United States.

Before HICKS and HICKENLOOPER, Circuit Judges, and TUTTLE, District Judge.

TUTTLE, District Judge.

Appellant, plaintiff below, brought suit against the United States to recover on a certificate of war insurance issued to him on February 6, 1918, under the provisions of the War Risk Insurance Act of 1917 (c. 105, 40 Stat. 398), claiming that he had become totally and permanently disabled, within the meaning of that act, during the life of such certificate, which expired July 31, 1919. At the conclusion of the proofs of the plaintiff the trial court directed a verdict in favor of the defendant on the ground that the evidence offered would not support a verdict for the plaintiff. The sole question involved on this appeal by the plaintiff is whether there was any substantial evidence which would have warranted the jury in finding that the plaintiff became totally and permanently disabled, within the meaning of this statute, while this certificate of war risk insurance was so in force.

Section 400 of the act (40 Stat. 409) provided for "insurance against the death or total permanent disability" of every officer and enlisted man in the military or naval service of the United States who complied with the requirements prescribed by the act. Section 402 (40 Stat. 409) provided that the Director of the Bureau of War Risk Insurance should "determine upon and publish the full and exact terms and conditions of such contract of insurance" and that "such * * * provisions for the protection and advantage of * * * the insured * * * as may be found to be reasonable and practicable, may be provided for in the contract of insurance, or from time to time by regulations." Section 13 of the act, as amended by the Act of May 20, 1918 (c. 77, 40 Stat. 555), provided that "The director, subject to the general direction of the Secretary of the Treasury, shall administer, execute, and enforce the provisions of this Act, and for that purpose have full power and authority to make rules and regulations not inconsistent with the provisions of this Act, necessary or appropriate to carry out its purposes."

Regulation No. 11 of the regulations prescribed by the Director pursuant to this Act contains the following provisions:

"Any impairment of mind or body which renders it impossible for the disabled person to follow continuously any substantially gainful occupation shall be deemed * * * to be total disability.

"'Total disability' shall be deemed to be 'permanent' whenever it is founded upon conditions which render it reasonably certain that it will continue throughout the life of the person suffering from it. Whenever it shall be established that any person to whom

any installment of insurance has been paid * * * on the ground that the insured has become totally and permanently disabled has recovered the ability to continuously follow any substantially gainful occupation the payment of installments of insurance shall be discontinued forthwith and no further installments thereof shall be paid so long as such recovered ability shall continue."

The proofs introduced by the plaintiff in the trial below, consisting of the testimony of the plaintiff and twelve other witnesses, included evidence which, if believed by the jury, would have established the following facts:

That the plaintiff was in good health prior to September 21, 1917, on which date he enlisted in the United States army; that he served in the artillery in France as a stable orderly, his duties including the breaking in of horses, in connection with which he was thrown, knocked unconscious, and injured; that while still in France he passed blood in his urine, which was seen by a sergeant serving in the same battery; that while at Camp Jackson, in the spring of 1918, after his return from France, he developed kidney trouble which caused him to again pass blood for about two weeks; that upon his honorable discharge from the army on June 18, 1918, he returned to his home in Cumberland, Tenn., but that for the next four or five months he did not work; that, as he testified, "the reason that he did not work during the first four months after his discharge from the army was because he was not able and because he spent his time lying around; that he did not know what was wrong but that he consulted his family doctor who gave him some medicine for kidney trouble, and at that time there was blood in his urine"; that he then worked for a short time at carrying water for a construction company, but suffered from kidney trouble during that time; that he then returned to his home, but was not well and did not work; that he then went to Memphis, where he peddled articles occasionally and worked as shipping clerk for several months until he was discharged "because he could not lift boxes" and "could not endure the work"; that late in September, 1924, he started to work for the Ford Motor Company at Memphis, where he had a light job in 1925, did not work much in 1926, worked very little in 1927, started on heavy work in 1928 but could not continue at it, was in a hospital in 1929, and finally was discharged because he could not satisfactorily perform the work, and "could not stand it"; that

while working for the Ford Motor Company he had been laid off part of the time on account of his physical trouble; that he then resumed peddling toilet articles but "was only able to work three or four hours a day and did not make good at peddling these articles because he became ill again with the same trouble"; that he worked as helper to a car knocker, as a repair man for a few days, then for a hunting and fishing club, and then for a few days as a collector; that he was treated by various physicians over a period of several years, beginning in June, 1918; and that he had been physically unable to hold his jobs, and had "pains in his back all of the time." There was also considerable medical testimony. Dr. Allen, a kidney specialist, who treated the plaintiff several years after his discharge from the army and whose qualifications were admitted, gave testimony based upon both his personal observation and treatment of the plaintiff and upon the history of the case. The following is quoted from the narrative statement of Dr. Allen's testimony:

"Gave history of blood in his urine on three occasions while in the army and in the spring and fall of 1919; had spells of bleeding lasting from one week to one month; has been bleeding off and on ever since; considered him permanently and totally disabled since he found out about the bloody urine, which has been continuous for about the past thirty months. He related tests and examinations he made and says that as near as he could find out the plaintiff possibly had a cancer or tumor of the right kidney or it may be tuberculosis which is causing the bleeding. It is impossible to make a diagnosis without operating on this man; taking out the kidney may or may not cause his death; that this man cannot work continuously or follow a gainful occupation as long as he is bleeding like he is. It is impossible for him to follow a gainful occupation until this condition is relieved."

The witness Dr. Patton considered the plaintiff permanently and totally disabled in 1928, after he discovered the bloody urine. The witness Dr. McIntosh, who examined the plaintiff early in 1929, corroborated the findings of Dr. Allen, considered the plaintiff greatly handicapped, and doubted that he would ever be able to pursue a gainful occupation. The witness Dr. Ellison testified that "a man with a bleeding kidney, or hematorrhea, cannot work."

We do not doubt, and indeed the defendant does not deny, that the promulgation of the regulation hereinbefore quoted consti-

tuted a reasonable and proper exercise of the powers conferred on the Director of the Bureau of War Risk Insurance by the statute; that such regulation has the force and effect of law; and that as the certificates of insurance granted thereunder were issued subject to the terms and conditions reasonably prescribed and to be prescribed by such regulations, the government, as well as the soldiers so insured, is bound thereby; United States v. Law, 299 F. 61 (C. C. A. 9). Compare White v. United States, 270 U. S. 175, 46 S. Ct. 274, 70 L. Ed. 530; Sawyer v. United States, 10 F.(2d) 416 (C. C. A. 2); United States v. Cole, 45 F.(2d) 339 (C. C. A. 6); Ross v. United States, 49 F.(2d) 541 (C. C. A. 5).

■ It is clear that the language of the applicable statute and regulation should be construed reasonably and in the light of the actual conditions and practical considerations involved. Obviously, the "total disability" here contemplated by Congress has reference to impairment of earning capacity, but not necessarily to entire inability to perform any work whatever [United States v. Eliasson, 20 F.(2d) 821, C. C. A. 9], nor even to entire inability to perform the same kind of work as that performed by him prior to such disability. United States v. Rasar, 45 F.(2d) 545 (C. C. A. 9). This regulation, therefore, properly defined such total disability as physical or mental impairment making it impossible to continuously follow "any substantially gainful occupation." The term "continuously," in this connection, refers, we think, to continuity which is reasonably regular in character but which, nevertheless, is not frequently interrupted by periods of inability to work. Ford v. United States, 44 F.(2d) 754 (C. C. A. 1). As long as, and only as long as, it appears reasonably certain that this total disability will continue permanently, such disability must be deemed permanent. Madray v. United States, 55 F.(2d) 552 (C. C. A. 4). Nor, in our opinion, is total disability, within the meaning of this statute and regulation, necessarily negatived by mere ability to work, if this be at the risk of serious physical injury. United States v. Acker, 35 F.(2d) 646 (C. C. A. 5); United States v. Phillips, 44 F.(2d) 689, 691 (C. C. A. 8); United States v. Godfrey, 47 F.(2d) 126 (C. C. A. 1); Carter v. United States, 49 F.(2d) 221 (C. C. A. 4). As was said by the Circuit Court of Appeals for the Eighth Circuit in United States v. Phillips, supra:

"If the mere fact that the insured did work is conclusive evidence that he was not permanently and continuously disabled, then there should have been no recovery on this policy. The term 'total and permanent disability' does not mean that the party must be unable to do anything whatever; must either lie abed or sit in a chair and be cared for by others. * * * Some persons, who are totally incapacitated for work, by virtue of strong will power may continue to work until they drop dead from exhaustion, while others with lesser will power will sit still and do nothing. Some who have placed upon them the burdens of caring for aged parents or indigent relatives, feeling deeply their responsibility and actuated by affection for those whom they desire to assist, will keep on working when they are totally unfit to do so."

In short, we think that the purpose and intent of the statute are given proper recognition and effect, and its scope and meaning are sufficiently and correctly expressed, by a construction thereof defining total disability as disability which makes it impossible for the insured to perform, with reasonable regularity, any substantial portion of the work of the world in regular competition with others, except at the risk of serious physical injury resulting from such work. United States v. Cox, 24 F.(2d) 944 (C. C. A. 5).

Applying these provisions of the statute and regulation, so construed, to the present record, and bearing in mind that the disposition of this case depends upon the question whether there was any substantial evidence tending to prove that the plaintiff was totally and permanently disabled, within the meaning of such provisions, between February 6, 1918, and July 31, 1919, does this record contain any such substantial evidence? It will be noted, from the references to the evidence already made, that there was direct and positive testimony to the effect that, although in good health prior to the war, the plaintiff was, in 1918 and during the life of his insurance certificate, suffering from kidney trouble accompanied by the passing of blood in his urine; that this condition, as long as it continued, would incapacitate the plaintiff for work; that such condition has been continuous ever since its inception and still persists; and that during substantially all of that time the plaintiff has been unable to work, except for relatively short and irregular intervals, and then only at the most trivial and unsubstantial kinds of labor.

■ In determining whether the court properly directed a verdict for the defendant, we must, of course, consider and construe the evidence, together with all inferences fairly

deducible therefrom, in the light most favorable to the plaintiff. Gunning v. Cooley, 281 U. S. 90, 50 S. Ct. 231, 74 L. Ed. 720. So viewing the testimony to which we have already referred, we think it clear that it constituted substantial evidence from which the jury, if satisfied of its truth, would have been justified in finding that during the life of this certificate of insurance the plaintiff was unable to follow continuously any substantially gainful occupation under conditions which rendered it reasonably certain that such inability would continue throughout his life. Barksdale v. United States, 46 F.(2d) 762 (C. C. A. 10); United States v. Scott, 50 F.(2d) 773 (C. C. A. 6); United States v. Tyrakowski, 50 F.(2d) 766 (C. C. A. 7); Sorvik v. United States, 52 F.(2d) 406 (C. C. A. 9); McNally v. United States, 52 F.(2d) 440 (C. C. A. 8).

The district judge in the court below, in the course of his statement directing a verdict for the defendant, used the following language:

"I think there is no question but this man, at the present moment, is in a very bad shape; should be out here at 88 (a Government hospital) and have an operation; but, I do not believe that the plaintiff has established that he was permanently and totally disabled within 31 days after the date of his discharge. * * * I hope it will be worked out so that he can get to that hospital and have a chance for a cure; but, I don't think he was in particularly bad shape when he came from the army. He was impaired to a certain extent, but certainly not permanently and totally disabled at that time."

Apparently, the trial court overlooked the fact that, from the evidence of symptoms and conditions of the plaintiff in 1918, similar to those in 1931, the jury might have found that the conditions of disability which appeared more pronounced in the later years had its origin, and existed, in the earlier period. La Marche v. United States, 28 F.(2d) 828 (C. C. A. 9). The question presented to us, as to the trial court, was, of course, not whether the plaintiff had "established" the requisite disability, but whether he had produced some substantial evidence of such disability. If he had, he was entitled to have the jury determine the question of fact thus raised, regardless of what the court did, or did not, "think" concerning that fact.

We conclude that the court erred in directing a verdict for the defendant, and that the judgment must be reversed and the cause remanded for a new trial.

HICKENLOOPER, Circuit Judge (dissenting).

I am of the opinion that the judgment of the District Court should be affirmed. The War Risk Insurance Act permitted only such regulations as were "not inconsistent" with the provisions of the act itself; that is, only such as would mature the policy in the event of death or "total permanent disability." There is no ambiguity in the latter phrase, and it seems to me axiomatic that, whatever might be the rating to be given to an insured prospectively, he cannot be said to have been permanently and totally disabled at the time of the lapse of his policy—with which time we are alone concerned—if between that time and the time of bringing suit, a number of years later, there were substantial periods of time during which the insured was able to perform without injury to himself, and did perform with reasonable regularity, and for gain, a material part of the world's labor, be such labor mental or physical, heavy or light. During such periods he was at best but partially disabled, whether his disability be regarded as total for but a part of each day, month, or year, or as embracing some part only of the work ordinarily open to each individual, or both. In each such case the permanency of the total disability, judged as of the date of his discharge, has been completely and conclusively negatived by the showing of substantial periods of time during which it did not exist. There may have been permanent partial disability, or temporary total disability, or both, but these were not covered by the insurance; they would not excuse the policy lapse for nonpayment of premiums. No regulation can alter this fundamental contract status.

There is respectable authority for holding that a work-record may be such as to definitely negative the classification of an earlier disability, even a total disability, as permanent. Cf. U. S. v. Rice, 47 F.(2d) 749 (C. C. A. 9); U. S. v. Harrison, 49 F.(2d) 227 (C. C. A. 4); Nicolay v. U. S., 51 F.(2d) 170 (C. C. A. 10); U. S. v. Lyle, 54 F.(2d) 357 (C. C. A. 6). And it seems to me that this doctrine applies to the instant case, for the appellant worked for several months as a shipping clerk, apparently continuously, and apparently being able to satisfactorily perform the duties of such clerkship without danger or injury to himself until he was re-

252

quired to "lift boxes," and he was incapable of this increased exertion. Later, in September, 1924, he started to work for the Ford Motor Company at Memphis, where he had a "light" job. He continued this work, again apparently with reasonable regularity, through 1925, followed it "not much" in 1926, and "very little" in 1927. He started on "heavy work" in 1928, but this he was not able to continue. The most that this work-record shows, it seems to me, is that during all of this period the appellant was unable to do work requiring a high degree of physical exertion, but with equal certainty, I think, it shows that he was able to do, and did do, over *substantial* periods of time, with reasonable regularity and without danger or injury to himself, and for the compensation usually paid for such services, various types of "light work."

All this, I think, demonstrates that although his case might have been prospectively classified as one of total permanent disability in 1919, and although he may then have had within his system the seeds of his present admitted total and permanent disability, if that disability which may probably be cured by an operation may ever be said to be permanent without attempting such cure, a classification of permanent total disability as of 1919 would have been erroneous, an error doubtless due to our inability to foresee coming events, but one which would have been none the less now obvious. It therefore seems to me that the appellant has wholly failed to show the happening of that event against which he was insured. The evidence falls far short, I think, of showing the necessary "substantial continuity" of total disability from the time of policy lapse to the time of trial, or that such work as was done was at the expense of injury or danger to the insured, and leaves the decision of this critical question to mere surmise or conjecture of the jury. Compare Atchison, T. & S. F. Ry. Co. v. Saxon, 284 U. S. 458, 52 S. Ct. 229, 76 L. Ed. 397.