ancient maxim of mobilia sequuntur person-am still applies to personal property, and that it may be taxed at the domicil of the owner; but upon examination they all, or nearly all, relate to intangible property, such as stocks, bonds, notes, and other choses in action."

The rule thus announced as to the taxation of intangibles has often been referred to since by that court with approval. See Blodgett v. Silberman, 277 U. S. 1, 48 S. Ct. 410, 72 L. Ed. 749; First National Bank v. Maine, 284 U. S. 312, 52 S. Ct. 174, 76 L. Ed. 313. The pleader here tried to bring this case within claimed exceptions to the general rule by alleging that the stocks and bonds had acquired a business and taxable situs at Wichita in the state of Kansas, but it seems obvious from the allegations of the bill that they were purchased with surplus funds not needed at the time in appellant's business, and it is difficult to see how they would become associated with and a part of business activities carried on in Kansas and taxable there. Rather, they were independent transactions standing alone. About all that can be expected from a reasonably prudent person in making such investments is that under the circumstances the securities will be locked up for safe-keeping, and the proceeds used when they are sold or paid off as the owner may then choose. We are therefore constrained to the view that the bill presented no exception to the general rule. We think the stocks and bonds were taxable at appellant's corporate domicil in the state of Oklahoma, and that the bill does not disclose they were taxable elsewhere.

The statutes of Oklahoma (section 9583, C. O. S. 1921) provide that "money invested in bonds, stocks or credits outside of the State of Oklahoma," and "All shares in foreign corporations, owned by residents of this State" shall be subject to taxation. Wharton on Conflict of Laws (3d Ed.) vol. I, §§ 80a, 80c; Cooley—Taxation (4th Ed.) vol. I, §§ 223, 230, vol. II, § 556.

The complaint alleged that the acts of defendants in listing and assessing the stocks and bonds violated guarantees of the Federal Constitution. The gravamen of the charge is that those acts will result in double or duplicate taxation, or may so result. But there is no federal guarantee prohibiting double taxation. Swiss Oil Corp. v. Shanks, 273 U. S. 407, 413; 47 S. Ct. 393, 71 L. Ed. 709; Kirtland v. Hotchkiss, 100 U. S. 491, 25 L. Ed. 558.

Affirmed.

C. L. Dawson, of Washington, D. C., and Louis E. Graham, U. S. Atty., and W. J. Aiken, Asst. U. S. Atty., both of Pittsburgh, Pa. (E. E. Odom and Bayless L. Guffy, both of Washington, D. C., of counsel), for the United States.

Saul Chersky, of Pittsburgh, Pa., for appellee.

Before WOOLLEY and THOMPSON, Circuit Judges, and FORMAN, District Judge.

THOMPSON, Circuit Judge.

This is an appeal from a judgment for the plaintiff in a suit brought in the District Court for the Western District of Pennsylvania upon a contract of war risk term insurance. The plaintiff enlisted for military service in the World War on April 4, 1918, and applied for and was granted a policy issued under authority of the War Risk In-

surance Act (section 400 et seq., 40 Stat. 398, 409), insuring him against the risk of death and total and permanent disability. The premium due December 1, 1918, was unpaid.

There was testimony from which the jury could find the following facts: The plaintiff had a hernia at the time of his enlistment; notwithstanding which he was accepted for service. The hernia became progressively worse while he was in the service, and an operation performed upon him at a base hospital not only failed to effect .a cure but increased his disability. He was given an honorable discharge on November 8, 1918, because of his physical condition. He returned to his home on crutches, was nervous, had no appetite, and suffered from a bad cough. He resumed his previous employment as a railroad switchman and trainman. He was, however, able to work only intermittently, and finally was dismissed because of ill health. Even less active employment as a masseur was too strenuous for him and was frequently interrupted by illness. A physician testified that the plaintiff consulted him within a month after his discharge from the Army, that at that time the plaintiff was still suffering from hernia, and, in addition, from neuritis, chronic bronchitis, and enlargement of the heart, and that his condition was progressively worse. This witness expressed an opinion that the plaintiff was not able to carry on continuously a gainful occupation in November, 1918, and that his disability would continue for the rest of his life.

■ The defendant assigns as error the refusal of the trial judge to direct a verdict for it. The question is thus presented whether there was sufficient evidence to warrant the submission of the case to the jury. In order to justify a verdict for the plaintiff, there must be proof that the disability, for which the claim is made, occurred while the policy was still in force and is total and permanent.

Treasury Decision No. 33, paragraph 2, Bureau of War Risk Insurance issued September 20, 1918, reads: "The said insurance shall lapse and terminate if, at the expiration of a period of 31 days after the insured leaves the active military or naval service for reasons other than those stated in section 29 of the war risk insurance act, the whole or any part of any premiums which were in arrears at the time of his so leaving the service remains unpaid, or if at any time after so leaving the service the whole or any part of any premium thereafter accruing is not paid promptly when due or within 31 days thereafter."

Since the premium due December 1, 1918, remained unpaid, the policy expired 31 days thereafter. In order that the plaintiff might recover, the disability should have occurred prior to the expiration of the policy. United States v. McPhee (C. C. A.) 31 F.(2d) 243.

The question as to the meaning of total and permanent disability must be determined by the ruling of the Director of the Bureau of War Risk Insurance pursuant to the authority granted him by Act May 20, 1918 (40 Stat. 555). He has, in Treasury Decision No. 20 promulgated March 9, 1918, defined total and permanent disability as follows:

"Any impairment of mind or body which renders it impossible for the disabled person to follow continuously any substantially gainful occupation shall be deemed * * * to be total disability.

"Total disability shall be deemed to be permanent whenever it is founded upon conditions which render it reasonably certain that it will continue throughout the life of the person suffering from it."

■ This definition has been applied with approval by this court in United States v. Auer, 51 F.(2d) 921. If the evidence is such that reasonable men may differ, it is for the jury to decide whether the plaintiff's disability is total and permanent.

■ We are of the opinion that the evidence presented by the plaintiff in the instant case, as to the total and permanent character of his disability and the time of its occurrence, was sufficient to warrant the submission of the case to the jury.

Judgment affirmed.