CONSER

v.

ATCHISON, T. & S. F. RY. CO.

No. 43454.

Supreme Court of Missouri.

Division No. 1.

March 8, 1954.

Rehearing Denied April 12, 1954.

Francis H. Monek, Chicago, Ill., Claude W. McElwee, St. Louis, Henslee, Monek & Murray, Melvin L. Griffith, Henry W. Lehmann, John J. Naughton, James E. Harrington, Chicago, Ill., of counsel, for appellant.

John H. Lathrop, Sam D. Parker, Kansas City, Richmond C. Coburn, Edward E. Murphy, Jr., St. Louis, for respondent.

HYDE, Presiding Judge.

Action under the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–60, for $100,-000 damages for personal injuries. The verdict and judgment were for defendant and plaintiff has appealed. Plaintiff claims error in denying his motion for new trial,

in rulings on evidence and in giving certain instructions.

■ Plaintiff's brief does not comply with Rule 1.08(a) (3), 42 V.A.M.S., but we will rule this case on the merits since we are able to determine from the whole brief the allegations of error and the points made under them, which present important questions, and because we have decided other recent cases on the merits where the situation was similar. See Ezell v. Kansas City, Mo.Sup., 260 S.W.2d 248; Fosmire v. Kansas City, Mo.Sup., 260 S.W.2d 252. To properly comply with Rule 1.08(a) (3) the allegations of error and the points relied on should constitute a short concise outline of the part of the brief called "an argument" in 1.08(a) (4). The purpose of this is to give the appellate court a short concise summary of what appellant claims the trial court did wrong and why he claims it was wrong.

Plaintiff alleged general negligence relying on the res ipsa loquitur doctrine. Plaintiff was the conductor of a 59 car freight train from Arkansas City, Kansas, to its destination in the South Shawnee yards in Oklahoma; and was riding in the caboose when injured, by having his head strike an iron post or stanchion at the side of the desk where he had been working. The pleading and submission of negligence was that defendant so carelessly and negligently operated the train that the caboose "was caused to be suddenly, unexpectedly and violently jerked with such force and violence that the plaintiff was thereby directly caused to be thrown against an iron post" and that the jerk was "unusual and extraordinary." According to plaintiff's own testimony, when the train stopped at the entrance of the South Shawnee yards, he was working on his reports at his desk, which was against the right side (engineer's side) of the car. Forward from the desk on the same side of the car was a bunk upon which a brakeman, W. P. Meek, was lying with his head toward the desk. Meek had become sick during the trip and had to lie down in the caboose. It was necessary for the train to stop so that a brakeman could

throw a switch to let the train enter the yard and the brakeman also had to phone the yard office to find out which track the train was to use. Plaintiff, thinking the train had been stopped too long, "started to rise, to go out and see what was the matter." Plaintiff said: "I laid my pencil down on the desk, put my hands on the desk and just started to raise when it was jerked out from under me, chair and all, throwing me against this iron post." This post was about 20 inches from his head as he stood at the desk. As to the violence of the jerk, plaintiff said: "Well, I never got one like it before. * * * It was the worst one I ever got." He said it overturned his desk chair and also a coal bucket near the caboose stove. He said he was knocked unconscious and the medical testimony showed he had a lacerated right ear and a linear fracture of the skull about three inches long.

Defendant's evidence, by the engineer, fireman and brakeman, was that in approaching the yard it was downgrade for about a mile and a half through the City of Shawnee; that the train brakes were applied so the train went through the city at less than 15 miles per hour; and that this application of the train brakes kept the slack stretched between the cars, so that the train stopped at the yard entrance with the slack stretched. Their testimony was that because of this condition it was necessary to back the engine about three feet to take up the slack in the first 3 or 4 cars before the train could be started, after the switch was thrown. The engineer said that he moved forward gradually and carefully, and attained a speed of about two miles per hour going into the yard, the brakeman getting on the engine as they passed the switch. The fireman said that the engine started forward slowly and that he did not notice any jerk or jolt of an unusual character in the engine cab. The fireman also estimated the speed at two miles per hour when the brakeman got on at the switch. The brakeman estimated it at only a mile or a mile and a half per hour when he got on. He also said the engine started slowly and that he heard no noise in starting beyond

the first three or four cars. All of defendant's witnesses said that in a movement of this kind the heaviest jolt would be at the fourth of fifth car, that is the next car back of where the slack was taken up. It was further shown that the trainmen found nothing wrong with the caboose when they looked at it after plaintiff was injured.

Defendant also had testimony by its Road Foreman of Engines that there is about one inch of free slack between all couplings, and that it is necessary to have this much play so that the couplers will operate in coupling and on curves. There is also about 2½ inches of what is called "controlled slack" in each coupler, which is due to having springs in the couplers for the purpose of absorbing or cushioning the shock of moving or coupling cars. Thus there is a total of about six inches slack between cars. Slack is helpful in starting a train because many times it would be impossible to start a train if it were so rigid that the whole train would have to be started as a unit. The best practice is to stop a train with the slack stretched out, and this is done by use of the train brakes operating on the entire train. If stopped by the independent engine brakes alone, the slack would run in and be bunched, especially on a downgrade, so that in starting the train it would be necessary to pull the slack out on each car. This would make the start rougher than it would on a stretched train. Therefore, it is more conducive to good train handling, and easier to control the slack, to keep it stretched; and the only way to do this is by use of the train brakes. There is necessarily more jolting in starting a freight train than a passenger train because there are more cars and a different type of coupler springs. There is usually some slack action in the caboose; trainmen expect it and learn how to brace themselves against it at all times.

Plaintiff's contention, "that there is not a reasonable basis in the evidence for the verdict and the Court erred in denying plaintiff's motion for a new trial", really amounts to a claim that the verdict is against the weight of the evidence. Since the plaintiff has the burden of proof, it is not necessary to have substantial affirmative evidence, or any evidence at all, to support a defendant's verdict. Steckdaub v. Sparks, Mo.Sup., 231 S.W.2d 160; Woehler v. City of St. Louis, 342 Mo. 237, 114 S.W.2d 985; Bloch v. Kinder, 338 Mo. 1099, 93 S. W.2d 932; Cluck v. Abe, 328 Mo. 81, 40 S. W.2d 558. This is just as true in a res ipsa case as in a specific negligence case. Res ipsa loquitur is a part of the law of evidence. Cudney v. Midcontinent Airlines, Mo.Sup., 254 S.W.2d 662. We follow the res ipsa rule stated by the Supreme Court of the United States in Sweeney v. Erving, 228 U.S. 233, 33 S.Ct. 416, 418, 57 L.Ed. 815, as follows: "Res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict." See McCloskey v. Koplar, 329 Mo. 527, 46 S.W.2d 557, 92 A.L.R. 641; Harke v. Haase, 335 Mo. 1104, 75 S. W.2d 1001; Charlton v. Lovelace, 351 Mo. 364, 173 S.W.2d 13; Cruce v. Gulf, Mobile & O. R. Co., 358 Mo. 589, 216 S.W.2d 78; Jesionowski v. Boston & M. R. Co., 329 U. S. 452, 67 S.Ct. 401, 91 L.Ed. 416. Certainly plaintiff's evidence was sufficient to make a jury case, under res ipsa, as substantial circumstantial evidence of negligence. Nevertheless, although the jury would have been warranted in inferring negligence from it, such an inference was not compelled and they could also infer from all the evidence that defendant was not negligent. As also said in Sweeney v. Erving, supra: "When all the evidence is in, the question for the jury is whether the preponderance is with the plaintiff." The jury was not required to believe plaintiff's uncorroborated testimony about overturning of the chair and the coal bucket and could have found that plaintiff was off balance when the train started. (It may have been significant to the jury that after subpoenaing Meek, and having him present at

591

the trial, plaintiff did not call him as a witness.) In short, the jury is no more compelled to believe the plaintiff's statement as to what happened than it is a defendant's explanation. See Gannon v. Laclede Gaslight Co., 145 Mo. 502, 46 S.W. 968, 47 S.W. 907, 43 L.R.A. 505. Of course, it must be and is conceded that plaintiff was injured but the question of whether or not there was negligence on the part of defendant, causing his injury, was an issue to be determined by the jury.

As to the weight of the evidence, our rule is that where the trial court has denied a new trial on such a discretionary ground, as here, an appellate court will not interfere unless it clearly appears that the trial court has abused or arbitrarily exercised its discretion. King v. Kansas City Life Ins. Co., 350 Mo. 75, 164 S.W.2d 458, 464. As said in that case: "The reason is that the trial court has a better opportunity to sense the trial atmosphere, confront the witnesses and consider unrecordable evidences of what the truth more probably is—things which appellate courts usually cannot glean from the cold record." Therefore, our rule is to defer to the ruling of the trial court, on such a discretionary ground, whether it grants or refuses to grant a new trial. We cannot find abuse of discretion or arbitrary action in a case where the question of negligence was a jury question, even though we should feel that as triers of the facts we might have decided it differently, when there is nothing to show passion, prejudice or misconduct. Ellis v. Union Pacific R. Co., 329 U.S. 649, 67 S.Ct. 598, 600, 91 L.Ed. 572, cited by plaintiff, is a case in which there was a plaintiff's verdict which was reversed by a state appellate court on the ground that the evidence was insufficient to show negligence. Of course, in that situation, as held by the United States Supreme Court, the verdict of the jury must stand if there was a reasonable basis in the evidence for their verdict. Plaintiff apparently confuses that situation of improperly setting aside a verdict for a plaintiff (when there was substantial evidence to support the plaintiff's

verdict) with the situation here in which the jury found against plaintiff. In the Ellis case the Court held that the jury might properly have found either way on the issue of defendant's negligence and that "it would be an invasion of the jury's function for an appellate court to draw contrary inferences or to conclude that a different conclusion would be more reasonable." It would be close to the same thing for us to grant a new trial on the ground that it would have been more reasonable for the jury to reach a different conclusion as to negligence in this case, after the trial judge has found that the verdict was not against the weight of the evidence. Zumwalt v. Gardner, 8 Cir., 160 F.2d 298, cited by plaintiff, was reversed for error in instructions. Likewise, the other cases cited by plaintiff are not controlling on this assignment and it is overruled.

Plaintiff alleges error in admission of a United States Veteran's Administration Hospital Record concerning plaintiff's stay at its Wichita Hospital in June and July 1945 for 30 days. Plaintiff's counsel had said in his opening statement that plaintiff went to the Veteran's Hospital at this time because he was tired out from overwork during the war years. Plaintiff testified that he did go because he was "just wore out" but denied having a nervous condition. The clinical record admitted showed that plaintiff complained of being "a little nervous and tired out or run down" and had a sensation "like some little bugs or something crawling on the skin at times"; and contained the diagnosis "psychoneurosis anxiety type mild." After defendant's counsel read in evidence this part of the clinical record, plaintiff's counsel read other parts showing nurses daily reports and physical examination results, more favorable to him. Plaintiff objected that the record was incompetent, confidential and privileged; contained conclusions and violated the hearsay rule; that it was brought in by a person not qualified to testify about its contents and without showing it was properly made; and now says, in offering it, defendant did not comply with the "Busi-

ness Records Act." Sections 490.660–490.-690 RSMo 1949, V.A.M.S., citing Gray v. St. Louis-San Francisco Ry. Co., Mo.Sup., 254 S.W.2d 577; and New York Life Ins. Co. v. Taylor, 79 U.S.App.D.C. 66, 147 F.2d 297. The witness who produced the record was a Veteran's Administration examiner and attorney in the St. Louis Regional Office. The Court asked plaintiff's counsel if there was "any doubt that this is not an official document of our government" and he answered: "I don't think there is any doubt about it but * * * I don't know that it is." However, whether or not there was an admission of authenticity by plaintiff, we think this witness's testimony was sufficient to show that it was an official record, required by law to be kept, and obtained from the Wichita Regional Office.

 Nevertheless, the witness was not in the hospital department, had nothing to do with keeping the record and had no personal knowledge about that. In the Gray case, 254 S.W.2d, loc.cit. 579 we held that Section 490.680 applies to and affects the admissibility of hospital records in the courts of this state, and we were considering the admissibility of a Veteran's Administration hospital record in that case. Although we can consider that the identity of this record was established, there was no showing as to the mode of its preparation or as to when it was made. According to Wigmore (3rd Ed., Sec. 1707), the admission of hospital records has always depended upon statute and that is true in this state as shown in the Gray case. Defendant's theory is that "records of the United States Government required by law to be kept are admissible in Missouri Courts under an exception to the hearsay rule", citing Priddy v. Boice, 201 Mo. 309, 99 S.W. 1055, 9 L.R.A.,N.S., 718. However, the record in that case was a certified copy of United States census reports; and it was admitted to show facts which public officers were required by law to determine. The opinion also puts records of weather conditions on this same basis. Other cases cited by defendant rule admissibility of reports of physical examinations made by Veteran's Administration doctors in actions in federal courts on war insurance policies (United States v. Cole, 6 Cir., 45 F.2d 339; Third National Bank & Trust Co. v. United States, 6 Cir., 53 F.2d 599) and to review a Railroad Retirement Board order (Taylor v. Latimer, D.C., 47 F.Supp. 236), and are not controlling here. (As to the kind of official records admissible under the "public documents" exceptions see 5 Wigmore, 3rd Ed. 512, Chap. LVI.) We must reaffirm our previous rulings that Section 490.680 controls the admission of hospital records and hold that defendant failed to make the showing required for admission of this hospital record, although, of course, plaintiff cannot be heard to object to the part of the record he read to the jury.

 However, we cannot hold there was prejudicial error requiring a reversal because the jury found for defendant on the issue of liability and this evidence related only to the extent of plaintiff's injuries and amount of damages. Miller v. Riss & Co., Mo.Sup., 259 S.W.2d 366; Poague v. Kurn, 346 Mo. 153, 140 S.W.2d 13 and cases cited. Plaintiff's objection as to the record being confidential and privileged, of course, was not valid since he was contending the injury to his head had caused damage to his brain resulting in a form of insanity which would become progressively worse and finally require him to be confined in a state institution. Plaintiff contends that this record showing a diagnosis of psychoneurosis injected a false issue into the case, first, as to considering whether plaintiff's mental condition was a continuation of a condition existing in 1945, and second, whether this condition made his testimony unreliable. As to the first, this was not a false issue but a very material one because in fixing damages the jury had to decide (if they found liability) whether plaintiff's claimed mental condition resulted wholly from his injury or existed in whole or in part prior thereto. As to the second, the medical evidence offered by plaintiff showed a far worse mental condition than indicated by the hospital record, including delusions and false beliefs; and plaintiff's counsel stated to the jury that plaintiff had symptoms of insanity and that his mind was "irretrievably gone."

If this credibility was affected by evidence of an abnormal mental condition, this was done as a part of plaintiff's case. Plaintiff also says the court refused to allow him to testify about the prior performance of the caboose; but plaintiff has not briefed this as an allegation of error, made no offer of proof at the trial and did not specifically mention it in his motion for new trial, so that there is nothing preserved for review.

■ Plaintiff also alleges error in instructions 5 and 6, given at defendant's request. As to instruction 5, plaintiff objects to the last sentence which was: "You should not find that defendant was negligent from the *mere fact of the occurrence* shown by plaintiff's evidence, if you find and believe from all of the evidence in the case that defendant was not negligent; and if you do find and believe from all the evidence in the case that defendant was not negligent, then your verdict should be for the defendant." Plaintiff says only that this italicised phrase was unnecessary and confusing in a res ipsa case. This sentence was suggested in Harke v. Haase, 335 Mo. 1104, 75 S.W.2d 1001; and approved by the Court en Banc in Lukitsch v. St. Louis Public Service Co., 362 Mo. 1071, 246 S.W. 2d 749. It might be better to use the word "sole" in place of the word "mere". However, Webster's New International Dictionary, 2d Ed. gives as definitions of "mere": "only this, and nothing else" and "nothing more than". We think it is clear that this instruction uses this term in this sense; and that considering the submission as a whole it was made plain to the jury that the occurrence could be "sufficient circumstantial evidence to warrant a finding by you that the defendant was negligent," as stated in instruction 1. It was also necessary and proper to tell them that they should make their finding as to negligence "from all the evidence in the case" and that is what this instruction did.

Instruction 6 was as follows: "You are instructed that the burden of proof is on the plaintiff to show by the greater weight of the credible evidence that the way car in which the plaintiff was riding was caused to be suddenly, unexpectedly and violently jerked with such unusual and extraordinary force and violence that the plaintiff was caused to strike the stanchion in the way car. And the Court instructs you that if you find from all the evidence that when the train started up to proceed into the South Shawnee yard, the way car jerked and the plaintiff was caused to strike the stanchion *but that the force of the jerk was not unusual and extraordinary in the operation of freight trains,* you shall find for the defendant."

■ Plaintiff says the italicised portion of this instruction singled out a particular matter and only required the jury to find on negligence from that, citing Colwell v. St. Louis-San Francisco R. Co., 335 Mo. 494, 73 S.W.2d 222; and Lithegner v. City of St. Louis, Mo.App., 125 S.W.2d 925. Plaintiff also says it leaves for consideration of the jury only the testimony of defense witnesses as to what happened at the head end of the train. Plaintiff further says: "It likewise invites the jury to accept defendant's false theory of the case that plaintiff's condition of ill-being at the trial, was a continuation of a 1945 attack of psychoneurosis as revealed by the incompetent and inadmissible Veteran's Hospital Record and thus excludes the evidence of what happened in the caboose by destroying the credibility of Conser's testimony." We are unable to follow this argument and cannot see anything in this instruction in any way related to psychoneurosis or excluding consideration of plaintiff's testimony. We think this was a proper converse instruction, in view of instruction 1 given at plaintiff's request. The first sentence was substantially in the same language as used in instruction 1, stating the facts essential to recovery. Instruction 1 properly required a finding that the "jerk of said caboose was unusual and extraordinary." Instruction 6 required a finding that it was not (in the kind of operation being conducted) as the condition for finding it for defendant. This submitted the converse of an essential element of plaintiff's case and a defendant is entitled to a verdict if the plaintiff fails to prove any es-

sential element of his case. Therefore, he is entitled to submit the converse of any essential element thereof. See Janssens v. Thompson, 360 Mo. 351, 228 S.W.2d 743; see also Quigley v. St. Louis Public Service Co., Mo.Sup., 201 S.W.2d 169. There was nothing wrong in limiting this to freight trains because it was the operation of a freight train that was involved in this case. Considering the instruction as a whole, as we must always do, we think the issues were made plain to the jury. We hold there was no error in giving these instructions.

The judgment is affirmed.

All concur.