ORR FELT AND BLANKET COMPANY *vs.* SHERWIN WOOL COMPANY.

SHERWIN WOOL COMPANY *vs.* ORR FELT AND BLANKET COMPANY.

Suffolk.    December 13, 1923. — April 15, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Contract,* Performance and breach. *Sale,* By instalments, Purchaser's right of inspection and rejection. *Evidence,* Letter, Self-serving statement, Admission by failure to call witness. *Witness.*

By a contract in writing a manufacturer of blankets agreed to purchase rags from a wool company, and the wool company for and on account of the manufacturer agreed to have the rags "picked and carded" by various shoddy mills before shipment to the manufacturer. Several shipments were made by the wool company to shoddy manufacturers, then returned to the wool company, by it shipped to the manufacturer, and paid for by the manufacturer. The manufacturer then received a shipment which he rejected on the ground that the shoddy was not equal in quality to that called for by the contract. At the trial of cross actions between the parties relating to alleged breaches of the contract, it was *held,* that

(1) Although shipments of previous deliveries had been accepted by the manufacturer, the judge properly instructed the jury, "Where in accordance with the contract of sale, goods are delivered by the seller to the buyer in instalments, and the goods in any one instalment are not equal to the goods called for by the contract of sale, the buyer may reject the entire instalment . . . , but the buyer cannot accept part of the instalment and reject part of the instalment;"

(2) It was a question of fact for the jury whether the shoddy manufacturers, who "picked and carded" the rags, were agents of the blanket manufacturer to accept the goods; and this question was left to the jury under proper instructions;

(3) The jury's findings having established that the shoddy manufacturers were not agents of the blanket manufacturer, the blanket manufacturer had a right of inspection before acceptance of each shipment as it arrived at his factory;

(4) A finding was warranted that the goods called for were "to be delivered as made" in instalments;

(5) A motion by the wool company that a verdict be ordered in its favor in the action of the blanket company against it properly was denied.

At the trial of an action of contract, the plaintiff offered a letter, parts of which were self-serving statements, and the defendant objected to its admission. It appearing that some of the statements in the letter

were not self-serving and that the defendant did not request that its admission be limited to the admissible statements, an exception by the defendant to admission of the letter as a whole was overruled.

At the trial of an action for breach of a contract in writing, it appeared that the contract was made through one acting as an agent for the plaintiff and that the agent left the plaintiff's employment before the alleged breach of the contract by the defendant. There was evidence tending to show that at the time of the trial the alleged agent was in the city where the trial was being held and was employed by another person, and that he had been interviewed by a representative of the plaintiff and also had been seen by the defendant within a short time previous to the trial. He was not called as a witness by either party. The defendant asked for an instruction that the jury could draw an inference against the plaintiff because of his failure to call his former agent as a witness. *Held*, that, it appearing that the witness was equally available to both parties and there being nothing to show that the plaintiff knew that his testimony would be adverse to the plaintiff, it was proper to refuse the defendant's request for the instruction.

CROSS ACTIONS OF CONTRACT relating to a contract of purchase by the plaintiff and sale by the defendant of shoddy. Writs dated respectively August 13, 1919, and October 31, 1919.

In the Superior Court, the actions were tried together before *Fosdick*, J. Material evidence is described in the opinion. The judge denied motions by Sherwin Wool Company for verdicts in its favor. In the first action there was a verdict for Orr Felt and Blanket Company in the sum of $33,836.28. In the second action, there was a verdict for the Sherwin Wool Company in the sum of $1,086.02. Sherwin Wool Company alleged exceptions.

*M. E. Bernkopf*, (*D. J. Dempsey, Jr.*, with him,) for Sherwin Wool Company.

*D. F. Carpenter*, for Orr Felt and Blanket Company.

CARROLL, J. The first of these two actions is in contract, brought by the Orr Felt and Blanket Company (hereinafter spoken of as Orr) against the Sherwin Wool Company (hereinafter called Sherwin). The second action is in contract brought by Sherwin against Orr. Both actions arise from the same transaction. Orr manufactured blankets at Piqua, Ohio; Sherwin was engaged in the rag business in Boston. Orr had no machinery for making rags into shoddy, but agreed to buy rags from Sherwin if he would have them

made into shoddy for and on account of Orr. The process of making rags into shoddy is known as " picking and carding." Rags " picked and carded ", at various shoddy mills on the order of Sherwin at Orr's expense were shipped to Orr. On April 2, 1917, Orr sent to Sherwin an order, the material part of which is as follows: " Please ship the following to us at Piqua, Ohio, via Star Union Line. . . . Fifty thousand (50,000) lbs. — White Serge, at 46c. . . . Picked and carded. Ship as made. Terms: 1% 10 days, net 60, F. O. B. Boston."

There was evidence that during the negotiations which led up to the placing of this order (hereafter referred to as the white serge order) Sherwin shipped a bale of rags to a shoddy mill, in his name, where the rags were picked and carded on Orr's account. Subsequent to the order, shipments of rags to shoddy makers were for the account of Orr but this fact was not known to the shoddy makers. The rags converted into shoddy were returned to Sherwin, and reshipped by him to Orr in the same container in which they had been received from the shoddy makers, and generally in the same freight car. The first shipment of five hundred and twenty-five pounds and another shipment of twelve thousand one hundred and fifty-two pounds were accepted and paid for by Orr. On December 20, 1917, Sherwin shipped twenty-eight thousand nine hundred and seven pounds of white serge rags to the shoddy mill and on the same date sent to Orr an invoice of this shipment. The amount of this invoice, $13,297.22, was paid by Orr. This shipment of rags was made into shoddy and sent to Orr in several lots. A portion of this shipment was accepted and used by Orr but the last four lots received July 3, 10, 12 and 13, amounting to seventeen thousand pounds of rags or sixteen thousand one hundred and fifty-five pounds of shoddy (the rags shrinking in the process of picking or carding) were rejected by Orr, on the ground that they were not equal in quality to that called for by the contract. Orr seeks to recover $8,174.20, which amount it is admitted he paid for sixteen thousand one hundred and fifty-five pounds rejected.

While the white serge order was being filled, negotiations began for the purchase of " brown worsted clips," clips being known in the trade as new and unused pieces of rags. Orr ordered fifty thousand pounds of brown worsted clips to be " picked and carded, same as shipments you have been making to us." Sherwin shipped forty-four thousand three hundred and thirty-seven pounds of its " regular packing No. 50 brown worsted clips " to a shoddy mill. After these were converted into shoddy and returned to Sherwin, they were forwarded, in the same manner as the white serge, to Orr and an invoice sent him for $21,291.36, which was paid later. Seven additional bales, invoiced for $3,059.04, were sent to Orr. This invoice was not paid. No part of these shipments was used by Orr, and he seeks to recover $21,291.36 which he paid Sherwin on the " brown worsted clips."

It was agreed that $8,174.20 and $21,291.36 were paid by Orr and received by Sherwin. In the action brought by Orr, there was a verdict in the sum of $33,836.28 for the plaintiff.

Sherwin seeks to recover the sum of $9,897.55 on an account annexed, for merchandise sold, also for picking and carding the rags. Orr admitted he owed Sherwin for materials received by him. Sherwin received a verdict in the sum of $1,086.02.

The ninth count in Orr's declaration is to the effect that the parties entered into a contract for the purchase and sale of fifty thousand pounds of white serge; that Orr paid for a certain number of pounds of this material; that thereafter Sherwin delivered the merchandise " pursuant to the amount so paid for; " that of said amount sixteen thousand one hundred and fifty-five pounds were not of the order and quality specified; and that Orr rejected the same and has since held them subject to Sherwin's order. Sherwin asked the trial judge to instruct the jury that Orr was not entitled to recover on this count; the contention of Sherwin being that the white serge contract was an indivisible contract, that the buyer could not reject a part of the goods.

The last four shipments made to Orr, that is, the shipments made on July 3, July 10, July 12, and July 13, were

all rejected by him. He had the right to inspect the goods sent him; and if they were of an inferior quality to those ordered and paid for by him he had a right to reject them. The trial judge on this question instructed the jury: " Where in accordance with the contract of sale, goods are delivered by the seller to the buyer in instalments, and the goods in any one instalment are not equal to the goods called for by the contract of sale, the buyer may reject the entire instalment . . . but the buyer cannot accept part of the instalment and reject part of the instalment." This was a correct statement of the law and if the jury found that the goods were not equal to those required by the contract the buyer could reject the entire instalment, although he had previous to this time accepted other deliveries made under the contract. See G. L. c. 106, § 36, cls. 1, 2.

The goods were sent to the shoddy makers by Sherwin in instalments, and it was only a part of this shipment to the shoddy makers that Orr attempted to reject. If the shoddy manufacturers were the agents of Orr to accept the shipments, there would be force in Sherwin's contention that a portion of the shipment to them could not be retained and the remainder rejected, that it could not be rejected in part. This, however, was a question for the jury; and they must have found by their verdict that the shoddy manufacturers were not the agents of Orr to accept, and therefore, he could make the inspection on arrival of each shipment to him at his factory, which he did, and the four entire instalments received by him were after inspection rejected. Even if the title passed to Orr he could reject the goods if upon examination they did not conform to the warranty. *Alden* v. *Hart*, 161 Mass. 576, 581. Williston on Sales, § 474.

Even if this were a sale of rags, as contended by Sherwin, Orr still had the right to test them when they came to his factory; and if in the process of picking and carding a portion of the material was destroyed, he was not deprived of his right of inspection and to reject the goods, although not in the form in which they were when sent to the shoddy manufacturers. See Williston on Sales, § 475. *O'Shea* v. *Vaughn*, 201 Mass. 412, 420.

The jury could have found that the goods called for were "to be delivered as made" in instalments. The motion for a directed verdict for Sherwin on the ninth count of Orr's declaration was refused properly; as was the motion that a verdict be directed for Sherwin on all the evidence.

Sherwin also asked the judge to instruct the jury, in effect, that if the white serge and brown worsted clips were delivered to the shoddy makers on the request of Orr to have the merchandise picked and carded for him, and were so delivered by Sherwin, and were of the quality ordered, and the shoddy makers accepted the goods and made them into shoddy, then Sherwin completed the contract by this delivery. It was a question of fact whether the shoddy manufacturers were the agents of Orr to accept the goods, and it was properly left to the jury to decide under full and appropriate instructions. *Savage* v. *Blackstone Beef Co.* 222 Mass. 81.

Orr offered a letter from him to Sherwin dated September 26, 1918, parts of which were self-serving statements. Sherwin contends that, the letter having been admitted under his exception, there was error in this ruling. Some of the statements in the letter were not self-serving, and it was the duty of Sherwin, when the letter was offered, to request that it should be limited to the statements which were not self-serving; the objections by Sherwin were not sufficiently specific on this point, and this exception is overruled. *Everson* v. *Casualty Co. of America*, 208 Mass. 214. *Wagman* v. *Ziskind*, 234 Mass. 509. *Eveland* v. *Lawson*, 240 Mass. 99.

Raymond S. Bartlett was Orr's agent when the contracts were made, and they were made with Sherwin by Bartlett. He left Orr's employment in March, 1918, the goods rejected by Orr were received after Bartlett had ceased to work for Orr. There was evidence tending to show that at the time of the trial Bartlett was in Boston employed by the American Woolen Company, and had been interviewed by a representative of Orr, and had been seen by Sherwin "within two weeks perhaps." Bartlett was not called as a witness by either party. Sherwin asked to have the jury

instructed that they could draw an inference against Orr because he failed to call Bartlett as a witness. In view of the correspondence in the case and all the facts shown, there was no error in refusing this request. Bartlett was equally available to Sherwin and there was nothing to show that Orr knew that Bartlett's testimony would be adverse to him on the issue raised at the trial. *McKim* v. *Foley,* 170 Mass. 426. *Card* v. *Turner Centre Dairying Association,* 224 Mass. 525.

There was no error in the conduct of the trial. In each case, the order is,

*Exceptions overruled.*