### UNITED STATES v. BLACKBURN.*
### No. 6436.

Circuit Court of Appeals, Ninth Circuit.
Oct. 19, 1931.

*Rehearing denied December 14, 1931.

Anthony Savage, U. S. Atty., and Cameron Sherwood, Asst. U. S. Atty., both of Seattle, Wash., and William Wolff Smith, Sp. Counsel, and Bayless L. Guffy, Atty., Veterans' Administration, both of Washington, D. C., for the United States.

Graham K. Betts, of Seattle, Wash., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and WEBSTER, District Judge.

SAWTELLE, Circuit Judge.

This is the second appeal in this case. On the first appeal, a judgment in favor of plaintiff, administratrix of the estate of John R. Blackburn, deceased, was reversed by this court because of error in admitting certain evidence. U. S. v. Blackburn, 33 F.(2d) 564, 565.

For convenience, the parties will be referred to as they appear in the court below. On the second trial, plaintiff was again awarded a verdict, and, from the judgment thereon, the defendant has appealed. Error is assigned to the denial of the defendant's motion for a verdict in its favor, and also to the admission in evidence over defendant's

objection of three separate written reports, made in 1921, 1922, and 1924, respectively, of physical examinations of plaintiff by government physicians.

■ The first assignment calls for ·consideration of the sufficiency of the evidence to support the judgment. Plaintiff's intestate enlisted in the .military service of the United States, November 16, 1917, and was honorably discharged therefrom September 25, 1919. At the time of his enlistment he applied for and was granted a policy of war risk insurance. The premiums thereon were paid until the time of his discharge, and thereafter, on October 1, 1919, the policy lapsed for nonpayment of premium. The insured died in December, 1925. The only issue is, Was the insured totally and permanently disabled at the time of his discharge from the army? The complaint alleged that insured became totally and permanently disabled while in the military service by reason of having been gassed, as a result of which he contracted stomach disorder, intestinal trouble, and pulmonary tuberculosis.

On behalf of the plaintiff, a witness who had known the deceased since the latter's childhood testified that when deceased entered the army he was rugged and in good health, and that after his discharge he had a slight cough all the time, that his complexion was sallow, and that he had lost weight. This witness worked with the deceased in a shingle mill for a short time in the latter part of 1919, or early in 1920, and testified that deceased did not work regularly, and that when he did work he was subject to vomiting spells, often several times a day.

Another witness, who had known the deceased for twenty years, testified that deceased worked for him about four months in the early part of 1921, doing light labor; that he had a continual hacking cough; that on some days he worked all day and on other days he had spells of coughing and vomiting, especially when he lifted anything, and the witness would then send him home; that for a few days deceased would "be pretty good" and that for the next few days "he wouldn't be so good," and that, except for one month, deceased did not work steadily, just a few days each month.

A friend of the deceased testified that he saw him a day or two after he returned from overseas; that deceased was then in bed and appeared to be in a run-down condition, and that he saw him many times after that and found him in bed most of the time.

Appellee, mother of the deceased, testified that after the latter's discharge her son stayed at home with her in the summertime and spent the winters in a government hospital and in Arizona, and that he was sent home from Arizona with a nurse; that he was sickly and worn out, had coughing and vomiting spells, and could not eat at times; that it tired him to do chores about the house, and that he spent his time reading and resting.

Dr. Lytle testified that he examined and treated deceased during May and June of 1925, and that he was then, and for a long period prior thereto had been, suffering from an advanced stage of tuberculosis, and was, in the opinion of the witness, totally and permanently disabled at that time, and that if he had active tuberculosis he should not have followed any occupation. The witness also testified that the condition of the deceased in 1925 had probably developed between the time he was gassed and the time of the medical examination he underwent in July, 1921. The examination in 1921 was made by a government doctor, whose report thereof was introduced in evidence at the trial. The report disclosed that the deceased was then suffering from chronic pulmonary tuberculosis and adhesions of the peritoneum. The plaintiff also introduced in evidence two similar reports, made in 1922 and 1924, disclosing chronic pulmonary tuberculosis, moderately advanced and active, respectively. The government offered a report of an examination made in March, 1920, which disclosed that deceased was then suffering from chronic conjunctivitis and adhesions of the peritoneum, the result of an operation for a ruptured appendix some ten years previous, but which made no mention of a tubercular condition.

On behalf of the government, a physician testified that he examined the deceased in August and December of 1920; that at that time he had stomach trouble, due to adhesions resulting from an old appendicitis operation; that he found no evidence of a tubercular condition; that he complained of stomach trouble and that it was possible that pains in the stomach were caused by intestinal tuberculosis; and that he was not totally and permanently disabled.

Another physician testified that he examined the deceased in March, 1920; that he was then suffering from abdominal adhesions; that he examined him for tuberculosis and found no evidence of such a condition, but that deceased could have been so afflicted at

that time because intestinal tuberculosis is very difficult to diagnose.

In our former opinion we said: "While the testimony was ample to prove temporary total disability, no witness, professional or lay, testified as to the nature of the illness from which the deceased was suffering, or as to the cause of his disability. The jury was left wholly to speculation and guesswork on both of these questions. Furthermore, the record fully discloses the fact that more satisfactory testimony was within the reach of the appellee. The physician whom the deceased consulted six months after leaving the army was not called as a witness, nor was any reason assigned for not calling him. The same may be said of the failure to call any of the physicians who must necessarily have attended the deceased during his long confinement in the different hospitals. In short, the jury was left with little or nothing to guide them in determining the vital issues in the case. These deficiencies in the testimony can doubtless be supplied in some measure upon a retrial of the cause."

On the first trial, Dr. Lytle, the witness above referred to, did not testify, nor were the reports of the government physicians offered in evidence. This additional testimony and evidence upon the second trial warranted the trial court in submitting the case to the jury.

In the second assignment of error, the defendant objected to the introduction in evidence of the physical examination reports above referred to, on the ground that they deprived the defendant of its right of cross-examination, and that the said reports contained statements made by the decedent himself, which are self-serving declarations.

The objections interposed are not well founded. In United States v. Cole (C. C. A.) 45 F.(2d) 339, 341, the court said: "There was no error in the admission of appellee's Exhibits H and I. These exhibits consisted of two reports of physical examinations of appellee each dated April 30, 1923, and signed by physicians of the Bureau. Only those parts of the reports which gave specific findings of fact were permitted in evidence. The examinations were made under the authority of the Director * * * and were taken from the Bureau's files pertaining to appellee. It is insisted that these reports are (1) confidential and (2) hearsay. We cannot agree. They are not confidential or privileged when required to be produced in any suit or proceeding pending in the United States court * * * and, in fact, no privilege was claimed for them in the lower court. Further, we regard these reports as exceptions to the hearsay rule. They were made by the examining physicians under the sanction of official duty and as and for a permanent record of specific facts to be kept in the files of the Bureau." (Citing cases.)

In Greenleaf on Evidence (16th Ed.) § 483, it is said: "The next class of public writings to be considered consists of official registers, or books kept by persons in public office, in which they are required, whether by statute or by the nature of their office, to write down particular transactions, occurring in the course of their public duties, and under their personal observation. These documents, as well as all others of a public nature, are generally admissible in evidence, notwithstanding their authenticity is not confirmed by those usual and ordinary tests of truth, the obligation of an oath, and the power of cross-examination of the persons, on whose authority the truth of the document depends. The extraordinary degree of confidence, it has been remarked, which is reposed in such documents, is founded principally on the circumstances, that they have been made by authorized and accredited agents appointed for the purpose; * * *"

To the same effect, see Jones' Commentaries on Evidence (2d Ed.) § 1700.

In the Cole Case, supra, it is true, only that part of the reports which gave specific findings of fact were received in evidence, while in the case before us the entire reports were admitted. However, their competency was not objected to on that ground, nor was the court requested to limit the consideration thereof to the specific findings of fact. United States v. Stamey (C. C. A.) 48 F.(2d) 150.

Under the circumstances, the reports were not inadmissible because the defendant was deprived of its right of cross-examination. If, in fact, they contained any self-serving statements made by the deceased, such statements should have been called specifically to the court's attention, with the request that they be excluded from consideration by the jury. Southern Pacific Co. v. Stevens (C. C. A. 9) 258 F. 165, 167.

"The report was admissible for a number of purposes. Much of it consisted of original evidences of debt, showing their dates. If any part of the record was inadmissible, it should have been particularly objected to." Osley et al. v. Adams (C. C. A. 5) 268 F. 114, 116.

In the case of Orr Felt & Blanket Co. v. Sherwin Wool Co., 248 Mass. 553, 143 N. E.

541, 543, a letter was admitted in evidence over objections, and the court said: "Some of the statements in the letter were not self-serving, and it was the duty of Sherwin, when the letter was offered, to request that it should be limited to the statements which were not self-serving; the objections by Sherwin were not sufficiently specific on this point, and this exception is overruled. [Citing cases.]"

It is also contended on this appeal that the reports were not properly identified. However, their admission was not challenged on that ground in the court below, and the objection cannot be raised for the first time in this court. In the case of Lederer v. Real Estate Title Ins. & Trust Co. (C. C. A.) 273 F. 933, 934, the court said: "The party objecting is, upon proceedings in error, confined to the objection stated at the trial, for the reason that the question of law raised by the specific objection made is the only one ruled upon by the trial court, and it cannot be said that the court erred in respect to a matter not brought to its attention, and upon which it neither ruled nor was asked to rule."

In the case of Noonan v. Caledonia Mining Co., 121 U. S. 393, 400, 7 S. Ct. 911, 915, 30 L. Ed. 1061, the Supreme Court said: "Objections to the admission of evidence must be of such a specific character as to indicate distinctly the grounds upon which the party relies, so as to give the other side full opportunity to obviate them at the time, if, under any circumstances, that can be done. United States v. McMasters, 4 Wall. 680 [18 L. Ed. 311]; Burton v. Driggs, 20 Wall. 125 [22 L. Ed. 299]; Wood v. Weimar, 104 U. S. 786, 795 [26 L. Ed. 779]."

Judgment affirmed.