### BURAK v. UNITED STATES.*
### No. 8756.

Circuit Court of Appeals, Ninth Circuit.

Jan. 19, 1939.

HEALY, Circuit Judge, dissenting.

———◆———

Hare, Turner & Maurier and Theodore S. Turner, all of Seattle, Wash., for appellant.

J. Charles Dennis, U. S. Atty., and F. A. Pellegrini, Asst. U. S. Atty., and George R. Stuntz, Atty. Dept. of Justice, all of Seattle, Wash., and Julius C. Martin, Director, Bureau of War Risk Litigation, of Washington, D. C., Wilbur C. Pickett, Sp. Asst. to Atty. Gen., and Thomas E. Walsh,

Atty. Dept of Justice, of Washington, D. C., for the United States.

Before HANEY, STEPHENS, and HEALY, Circuit Judges.

STEPHENS, Circuit Judge.

In 1917 and while appellant was in the United States military service, he was insured under a war risk insurance policy. By a United States District Court judgment entered November 2nd, 1927, he was adjudged "totally and permanently disabled" from and after May, 1918, and pursuant thereto a lump sum of money was paid him and thereafter he received monthly installments of money under the terms of the policy until February, 1936. On such date the government ceased such payments because it held that appellant was no longer "totally and permanently disabled". Thereafter appellant brought suit in the United States District Court under and pursuant to § 19, World War Veterans' Act, as amended, 38 U.S.C.A. § 445, alleging in effect that he had not recovered from his disabilities and that from the date of the above referred to judgment he had continuously remained "totally and permanently disabled". The case was tried to a jury and resulted in a verdict for the government. Thereafter appellant made a motion for a new trial, which the court denied, and appellant then prosecuted this appeal from the judgment as entered pursuant to the verdict.

(I shall refer to the last mentioned action, the trial thereof, and the judgment entered therein, as the *second* action, *second* trial, and the *second* judgment, respectively.)

It will aid in the ready understanding of the main problem in the case if at the outset it be noted that the phrase "totally and permanently disabled" as used in the statute has a technical meaning quite different from its literal meaning. It does not necessarily mean that the insured, when declared to be totally and permanently disabled, is completely and irretrievably disabled for the rest of his life.

Acting under the authority of § 13 of the War Risk Insurance Act, 40 Stat. 399 (reenacted as Sec. 5 of the World War Veterans' Act, as amended July 3, 1930, 40 Stat. 991, 38 U.S.C.A. § 426) the Secretary of the Treasury propounded Treasury Decision 20 (March 9, 1918), defining or explaining the phrase as follows:

"Any impairment of mind or body which renders it impossible for the dis-

·Rehearing denied March 15, 1939.

abled person to follow continuously any substantially gainful occupation shall be deemed, in Articles III and IV, to be total disability.

"Total disability shall be deemed to be permanent whenever it is found upon conditions which render it reasonably certain that it will continue through life of the person suffering from it."

The same decision also contained the following: "Whenever it shall be established that any person to whom any installment of insurance has been paid as provided in Article IV on the ground that the insured has become totally and permanently disabled, has recovered the ability to continuously follow any substantially gainful occupation, the payment of installment of insurance shall be discontinued forthwith and no further installments thereof shall be paid so long as such recovered ability shall continue."

Cf., U. S. v. Hartley, 9 Cir., 99 F.2d 923, November 15, 1938; U. S. v. Hill, 9 Cir., 99 F.2d 755, November 7, 1938; Kontovich v. U. S., 6 Cir., 1938, 99 F.2d 661, and cases collated therein.

As we have seen, those having in charge the administration of the World War Veterans' Act, having "established" that appellant had recovered his health sufficiently to enable him to follow "a substantially gainful occupation", discontinued the payment of insurance installments, and appellant brought the second action.

In the course of the trial thereof the judge presiding overruled objections to the introduction of evidence as to work done by appellant prior to the first judgment, and appellant assigns such ruling and the subsequent introduction of such evidence as reversible error. Before the submission of the cause to the jury appellant also moved the court to strike such evidence from the record.

The motion to strike was as follows: "I (appellant's attorney) move to strike all the testimony of this witness on the ground * * * that it was prior to the date of the verdict in the previous trial and is immaterial to prove any issue in this case."

The objection to such testimony was that it was not material, that it related to a time prior to the verdict in the former suit, and that its purpose was and its effect was to impeach the judgment in the first action.

We shall proceed to consider this assignment of error.

The issue before the trial court in the case here under review was: Was the appellant "totally and permanently disabled" at any time after the cessation of installment payments and before the filing of the complaint in this action; and if so, between what specific dates was he so disabled?

In approaching the solution of this issue it is obvious that the evidence of appellant's health prior to the time he claims in his suit that he was totally and permanently disabled, may throw a revealing light upon the state of his health for the period embraced within his claim.

But, it is argued in accordance with the objection in this case that this potential test of the factual basis of appellant's claim is locked securely against use because of the prior judgment which fixed his health status from May, 1918 to November 2, 1927, the date of such judgment. The writer of this opinion sees no sound reason for such restrictive doctrine.

It is not contended by anybody that the evidence objected to in this case might not very properly affect the jury's verdict, if the jury can be allowed to consider it. But upon some indefinite doctrine that does not assume the dignity of res judicata, appellant wished the trial court to hold that the government was estopped from using it in arriving at appellant's health status at a time subsequent to the judgment in the first case.

It would seem that such idea comes from a misconception of just what is made res judicata by the first judgment. The status of appellant as one who was "totally and permanently disabled" for the period of time covered by the first judgment is of course unchangeable. But this fact does not exclude all items of fact from consideration in the second trial merely because they were pertinent (whether introduced or not) to the issues of the first trial.

It would of course be different if the literal meaning of the phrase "totally and permanently disabled" were to be taken into consideration instead of its modification as heretofore stated. And it may be conceded, for the sake of argument, that no evidence questioning a fact in the nature of the case essential to the judgment pronounced in the first action can be in-

troduced in the second action. The evidence to which the objection runs in this case does not come under this heading.

The facts upon which the testimony objected to in the second case are based, may tend toward a different judgment than the one arrived at in the first case, and yet it may be that that judgment was supported by other and more convincing testimony. But the testimony under objection may be strong enough to justly sway the judgment the other way in the second case when related to testimony pertinent to a subsequent time. Convincing illustrations may be thought out with little trouble, but I think the point is clear without their use. The point is that specific facts put in evidence are but evidentiary of the ultimate issues of a case.

Freeman on Judgments (5th Ed., Vol. 2, § 690) has the following to say upon this point:

"The doctrine of estoppel is restricted to facts directly in issue and therefore does not ordinarily extend to facts which may be in controversy, but which rest in evidence and are merely collateral even though they may have been passed upon. * * *

"During the trial of a cause, evidence may properly be received of the existence or nonexistence of facts which, though they bear upon an issue, and tend to show on which side of it the truth is, are not, though conceded to exist, necessarily conclusive. * * * *if the judgment can be correct, whether the fact in question exists or not, it is not directly in issue, and therefore does not become res judicata.*" (Emphasis supplied.) Freeman, supra, § 690 pp. 1457, 1458. See, Cromwell v. Sac County, 94 U.S. 351, 352, 353, 24 L.Ed. 195; Troxell v. Delaware Lackawanna & Western R. Co., 227 U.S. 434, 440, 33 S.Ct. 274, 57 L.Ed. 586; Myers v. International Trust Co., 263 U.S. 64, 70, 71, 44 S.Ct. 86, 68 L.Ed. 165; cf. Southern Pacific R. Co. v. United States, 168 U.S. 1, 50, 18 S.Ct. 18, 42 L.Ed. 355.

The idea that the statute itself compels the other view does not impress me. It is true that the statute says that no further payments of insurance installments shall be made to appellant after the government has *established* that the insured "has *recovered* the ability to continuously follow any substantially gainful occupation * *". However, since the status of appellant has been unchangeably fixed by the first judgment for the period of time embraced thereby as one of "total and permanent disability" no change of such status could be legally contemplated except upon the conception of *recovery*. In my view the premise of "total and permanent disability" for the period of time cognizable by the first judgment is unqualifiedly accepted and all relevant and material evidence not tending to question a fact by the nature of the case not essential to the first judgment, is received in the second action to show the condition of appellant under the issues of the second suit. If such evidence shows appellant not ratable within such status, in legal contemplation, he has recovered the ability to continuously follow a substantially gainful occupation.

It is my opinion that evidence otherwise proper cannot be excluded from the second case merely because it would have been proper evidence to the issues of the first case. And I express it as my opinion that the testimony admitted by the trial judge in the second case was properly admitted both as affirmative proof that appellant was not totally and permanently disabled for the period cognizable in the second case, and to rebut or test the truth of the evidence introduced by appellant to establish his total and permanent disability.

If the rule is that the government could not make such a showing, then I apprehend that the rule would work both ways, and the veteran as well as the government would be subject to the same limitation. I think such a rule would unreasonably restrict the ascertainment of material facts and should not be favored by the courts.

The following quotations from appellant's testimony show plainly that he related his troubles to his experiences and exposures in the war:

"It was at night, in the second line trenches. We were attacked by the enemy with a big shell and they got us in the trenches and the boys around me practically all got killed except me. I was down low so the shrapnel went right over me but the dirt went over my back and buried me down, except my head. That was the last I seen of the attack."

"I was down at the University in St. Paul after the war; that was rehabilitation. I done some steel work before the war, probably seventeen or eighteen years ago. I worked at kitchens certain times in lumber camps, and I sailed on boats, and

I worked at the Big Four, Minneapolis, at the tractor factory."

"You see, I was too long in the trenches and I had to work out here, there was no excuse, my feet got flat, my vericose veins—"

"I was trying to get help for my ears down at Portland; they refused to do anything. I have holes in my mouth; I have the same thing in my chest, from the gas. This was the gas when I was in the front line trenches in the war. At different times, I dream about trenches of some sort; and I got to wake up and have a hard time to go back to sleep; I have to walk around or smoke. A couple of hours or so, I may be able to go to sleep again. These spells of dizziness and seeing stars come on me when I feel pain in my back or chest. Besides, when I am working, they don't come on except I happen to run fast or do something which is overstrain. When I get angry, everything comes up to me and I get noises in my head. If anything happens, I try as quick as possible to get in a quiet place. * * * I didn't work for nobody after the trial."

"The main thing is my feet. I can't stand up on my feet. My feet begin to shake this way (indicating) and my back and my bones, looks like they are all going apart sometimes; sometimes I take my hand like that, I am afraid I can't bring it back; sometimes when I sit down, I think I am unable to stand up. I am just like—you know—you slip down on your foot or something and it wouldn't come back in place; sometimes, I go to sleep, my arm or something, I wake up—can't feel my arms for an hour or two until I rub them, they are numb—"

Briefly stated, the testimony as to the work record objected to was as follows:

On cross-examination he (appellant) was questioned, over objection, with respect to jobs held and work done in the years 1925, 1926 and 1927. In its own case the government was allowed to introduce testimony of a special agent for the Federal Bureau of Investigation as to facts found in an investigation of payroll records relating to appellant's employment. This evidence was to the effect that from July, 1925 to November, 1927, appellant had worked for eleven different lumber companies as bull cook, flunky, bed-maker, pump man or dragsaw operator. The witness went into much detail as to occupations, wages, and dates of employment.

Another witness for the government was permitted to testify that for two or three months prior to November, 1927, appellant was employed in a lumber camp where he made beds for about fifty men, split wood and made fires in the stoves, carried the garbage from the cookhouse and swept eight bunkhouses twice a day.

The defense introduced exhibits representing payroll checks received from five different employers, dating from August, 1925, to September, 1927, aggregating about $400. Another exhibit was an application for employment dated September, 1925, containing extensive recitals of appellant's employment prior to that date.

In receiving such testimony in the second trial the judge amply and plainly advised the jury that such evidence was to be considered only as to its effect upon the proof of appellant's condition subsequent to the date the government stopped the benefit payments, and was not to be considered at all in relation to the issue in the first trial. This admonition was repeated in the final instruction to the jury. Should we determine that the jury was not bright enough to understand and appreciate this instruction, and assume, notwithstanding the plain intent of the instruction, that the jury would through confusion apply the evidence to the issues of the first trial, we would be indicting the jury system of our jurisprudence as incompetent.

I am convinced that no error was committed by the admission of appellant's prior work record.

But it is quite reasonable at this juncture to inquire just what harm could be expected to result from such confusion even if it be conceded that confusion was present. Is it not true that the most that could have happened is that the jury might have made up its mind that appellant never was "totally and permanently disabled" and if it thought so might have disregarded the force of the rule (roughly expressed) that things or conditions established as existing are presumed to continue to exist? The jury in this case in such circumstances would begin the review of the evidence admitted at the trial without the force of this presumption. But since appellant himself was permitted and did freely go into evidentiary facts antecedent to the first judgment, and since such evidence and the government's evidence objected to was all relevant to his condition for the period covered by the second action, it

hardly seems consistent with the modern tendency of our jurisprudence to place this weak presumption over direct factual proof in order to reverse the verdict of a jury in a Federal court of law where the judge presiding has seen fit to deny a new trial. The appellant himself showed the way and he should not be allowed to complain after the case was conducted along the pathway of his own leadership.

Error is also assigned because the jury was instructed that "an insured who is suffering from a curable disease cannot, through his own neglect and inaction, permit the disease to progress to an incurable state, and then assert a liability on the insurance contract on the ground that the disability was permanent at its inception".

There was no evidence in the case to which this instruction could be related and in all probability this instruction was given inadvertently from a stock form. I think it was not reversible error.

Timely objection was made by appellant to the form of the verdict submitted to the jury, which form was as follows: "We, the jury in the above entitled action, find for the plaintiff, and fix the date of the beginning of his permanent and total disability from ————." I think there was no error in this form of verdict.

I have treated all of appellant's assignments of error except his assignment number four. My associate, Judge HEALY, has heretofore prepared certain comment upon this assignment which I think admirably covers the ground. I therefore adopt the same as my own with acknowledgment.

Error is assigned in the admission of a report of a medical examination of appellant made at a Veterans' Hospital in 1935. A number of physicians had participated in the examination including a Dr. Ernest, who testified at the trial. The objection is confined to the portion of the report made out by Dr. Ernest. It is contended that, since the physician himself had testified, the report was hearsay.

Reports of this nature have often been admitted into evidence as an exception to the hearsay rule. United States v. Smith, 9 Cir., 55 F.2d 141, 81 A.L.R. 926; United States v. Blackburn, 9 Cir., 53 F.2d 19; United States v. Cole, 6 Cir., 45 F.2d 339; United States v. Stamey, 9 Cir., 48 F.2d 150; Third National Bank & Trust Co. v. United States, 6 Cir., 53 F.2d 599; United States v. Wescoat, 4 Cir., 49 F.2d 193; United States v. Rucker, 7 Cir., 80 F.2d 369. See, also, Wigmore on Evidence, vol. 3, § 1420 et seq., § 1630 et seq. As stated in the Wescoat Case, supra, such evidence "falls clearly within the principles under which exceptions to the hearsay rule are admitted, i. e., necessity and circumstantial guaranty of trustworthiness" [page 195]. We have found no case, however, in which the officer whose report was offered in evidence was also present as a witness.

It is true that the language used in a few of the cases seems to place some emphasis upon the element of necessity; that is, the fact that the physician is not available as a witness. United States v. Wescoat, supra, Third National Bank & Trust Co. v. United States, supra. Appellant contends that this language should be construed to mean that the report is inadmissible if the physician himself takes the stand.

The contention is unsound. The element of necessity is merely one of the grounds upon which this exception to the hearsay rule has been based. That ground is not indispensable. The fact that these medical reports, made in the regular course by government physicians who are under a duty to record the facts, are reliable as evidence, is sufficient ground for their admission. Furthermore, the case for their admission is all the more compelling when the physicians who prepared the reports are present in court and subject to cross-examination. Accordingly, we (I) hold that there was no error in the admission of the report.

Affirmed.

HANEY, Circuit Judge (concurring).

I concur in the result obtained by Judge STEPHENS. I think there is only one debatable point raised, and that is whether or not the admission of evidence showing appellant's work record prior to the judgment in the first trial was reversible error. I can see no materiality of such evidence in the instant case. It seems to me that evidence that a person did work at one time is entirely irrelevant to an issue as to whether he was able to work ten years later. Furthermore, since it was adjudicated once that such work record was insufficient to negative permanent and total disability arising shortly after the work was performed, it seems wholly unreasonable to say that such work record tended to negative permanent and total disability arising some ten years later.

When the court below admitted the evidence, it said that such evidence was "admitted for the purpose of throwing light on the plaintiff's present ability to follow a gainful occupation * * * and will be disregarded by the jury for any and all other purposes." The court again instructed the jury that such evidence was "received only as it may have evidentiary effect upon the issue in this case." The jury was not compelled to consider such evidence at all. The effect of the instruction was, I think, that the jury might, but was not compelled to, consider such evidence if it served as an explanatory background for the evidence on the issue presented. I think the instruction could be easily followed by the jury, and that the admission of the evidence, as limited by the instructions, was not reversible error.

HEALY, Circuit Judge (dissenting).

In the first suit it was adjudged that appellant became totally and permanently disabled in May, 1918, at a time when his policy was in force, and that he continued so disabled to November 2, 1927, the date of the verdict. The main opinion holds that in the present suit it was proper to admit evidence of the insured's ability to work during this time, notwithstanding he had been adjudged unable to work. As I understand the views expressed by Judge HANEY, he is of the belief that while the evidence was improper it was not prejudicial. From both views I dissent.

The main opinion summarizes briefly the character and extent of the evidence objected to. It covered a period of nearly three years ending prior to November, 1927. Aside from medical testimony, it formed in reality the backbone of the Government's defense, both on the cross examination of the insured and in the Government's case in chief. All of it went in over appellant's objection that it was not material, that it related to a time prior to the verdict in the former suit and that its purpose and effect were to impeach the judgment in that action.

In no fair sense can it be said that appellant himself opened this field or that the error in admitting the objectionable evidence was invited error. The evidence of appellant's work record was not responsive to any testimony introduced on his behalf relating to the period of his adjudged disability, nor in rebuttal of any such testimony. The main opinion, after what was no doubt a painstaking search of the record, has collated a stray reference or two which may be said to relate to this period; but I find nothing to justify the observation there made that "the appellant himself showed the way and he should not be allowed to complain after the case was conducted along the pathway of his own leadership." True, the veteran claims he is now incapacitated and he attempted to describe his condition, but I think his testimony in this respect properly led the way to nothing except an inquiry into the current state of his health.

Upon opening his case the appellant related briefly an incident occurring in the trenches. The testimony was innocuous so far as concerns any harm done the defense, and at most was purely preliminary or explanatory in character. It is not even to be inferred that the insured was injured on that occasion. Nor did the Government contend that he had not served in the trenches or that the incident related had not taken place. The veteran's service record was not in dispute and it had been judicially determined that he became totally disabled during the period of his service.

The sole issue in the present suit was whether appellant was suffering from total and permanent disability subsequent to January, 1936. Ordinarily, evidence of work done at any time subsequent to the date of the causative injury would be material to the inquiry. Evidence that in the years 1925 to 1927 the insured followed gainful occupations would tend strongly to show that he was not totally disabled during those years; and, unless there was proof of a change for the worse, an inference would arise that he was not totally disabled at a later time. A condition of ability to labor, once shown to exist, is, like other conditions, presumed to continue unless the contrary appears. The rule of law to this effect merely recognizes the accumulated wisdom of experience. Jurors, like other humans, reason in this fashion.

Here, however, we are confronted with the former judgment. While this was not res judicata as to the issue in the present suit, it nevertheless conclusively determined the fact that during the whole of the earlier period appellant was totally and permanently disabled, notwithstanding the work he did. "The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue,

and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified." Southern Pacific Railroad Co. v. United States, 168 U.S. 1, 48, 18 S.Ct. 18, 27, 42 L.Ed. 355.

The prior judgment established not only appellant's total and permanent disability as of May, 1918, but also the fact that such condition persisted to the date of the jury's verdict; and that the circumstances were such as to render it reasonably certain that the disability would continue throughout life. That judgment, it seems to me, clearly foreclosed evidence of work previously done, since the present materiality of such evidence is necessarily limited to the inference to be drawn from it, namely, that as appellant was shown to have been able to work during the earlier period he is able to work now, no change in his condition appearing. This chain of logical inference was broken by the intervening judgment, and evidence of the work became immaterial.

It is said that the proof was not offered or received as bearing on appellant's ability to labor at the time the work was done, but solely for the purpose of throwing light on his ability to labor now.[1] I think the argument is specious. In itself, the fact that appellant worked is of no importance; it has significance only as bearing on the issue of disability. In war risk insurance cases, as is well known, the ability of the veteran to follow a gainful occupation is invariably subjected to an empirical test— the extent to which he has actually pursued gainful activities. The judgment in the first suit conclusively determined the proposition that appellant, whatever may have been the extent of his labors, was nevertheless totally disabled. What the Government is now attempting to do is to create an inference of present ability to work by proof of ability to work during the former period, in the teeth of the adjudication to the contrary.

In suits of this type the real problem is whether, in the period following an established disability, the veteran has *recovered* the ability to follow continuously a substantially gainful occupation. See Kontovich v. United States, 6 Cir., 99 F.2d 661, 665. To permit evidence of the kind here in question would subvert the trial into an inquiry whether the veteran ever was disabled. There must be an end to litigation. Discontent with the outcome of the suit, or neglect fully to present available evidence, is no warrant for rejecting the binding force of the judgment. Otherwise, the Veteran's Administration would be free to compel the insured to establish his disability over and over again on the same set of facts.

On the basis of the main opinion, a careless or stubborn administrator may, within a few weeks after a judgment of total disability has been obtained, declare that the insured has recovered, and in proof of his present capacity introduce evidence of work performed prior to the judgment, whether or not it was produced at the former trial. In this way the Bureau may arrogate to itself, of its own motion, the right to obtain a new trial of an issue already solemnly determined. It is beside the point that, though a different result is obtained on the second trial, the Government does not thereby escape the obligation of paying accrued benefits in line with the first judgment. The principle of res judicata is not so narrow as that.

The difference between the assumed case and the present one is purely a difference of degree; and it can hardly be said that evidence of prior labors becomes admissible through mere lapse of time. Where recovery is claimed and a second suit made necessary the inquiry should ordinarily be limited to the condition and activities of the veteran subsequent to the previous adjudication. Of course, evidence of prior facts and circumstances will inadvertently creep in during the trial of

---

[1] Presumably in an attempt to limit the effect of the evidence the following instruction, with others of the same import, was given: "The jury are again instructed this testimony is received only as it may have evidentiary effect upon the issue in this case, to wit; whether or not the plaintiff was, on or before January 31, 1936, totally and permanently disabled and is now and is likely to continue so in the future. It is only on that question that this testimony is received and the jury will consider it so limited."

such cases, and sometimes such facts may have an explanatory value giving them an independent relevancy. It is not always that the reception of evidence of this sort is improper or will justify a reversal. Here, however, the testimony objected to had no tendency to explain the nature of the adjudged disability or to throw any light on the question whether the insured had recovered from it. The majority make no such claim for it. So far as I am able to appraise it, the immediate and sole probative effect of this evidence was to show that the adjudged disability never in fact existed. Nor was its introduction inadvertent; it was deliberate and purposeful, and the evidence was marshalled with calculated regard to its effect.

The claim has been made that the evidence was robbed of its prejudicial effect by the instruction of the court that "* * if you find that the plaintiff instituted suit in this court against the defendant some time prior to July 2, 1928 and that thereafter judgment was rendered in favor of plaintiff and against defendant upon the verdict of a jury returned November 2, 1927, that plaintiff was permanently and totally disabled from May 1918, and that plaintiff recovered the installments of his insurance accruing up to the date of the verdict, then you must accept it as a fact that plaintiff was totally disabled at the time of the verdict from following any substantially gainful occupation, and that he had been continuously so disabled since May 1918, and further that such disability existed under conditions which rendered it reasonably certain as of November 2, 1927, that such total disability would continue throughout the life of the plaintiff."

This instruction was appropriate and should, indeed, have been given in any event; but it did not cure the damage done by the testimony improperly admitted. I think it was not possible for the jury to dismiss from their minds the extensive evidence of the prior work record, nor were they told to disregard it. On the contrary, they were instructed to consider it.

Juries are not trained to make finespun distinctions. Here they were required to accept it as a fact that appellant was totally and permanently disabled in November, 1927, and at the same time instructed to give weight to compelling evidence that he was not then disabled. The feat is one impossible of performance even by an experienced judge. As observed by Justice Cardozo in Shepard v. United States, 290 U.S. 96, 54 S.Ct. 22, 25, 78 L. Ed. 196, "discrimination so subtle is a feat beyond the compass of ordinary minds."

The majority opinion holds that there was no error in overruling appellant's objection to the form of the verdict submitted to the jury. This was as follows: "We, the jury in the above entitled action, find for the plaintiff, and fix the date of the beginning of his permanent and total disability from ————." I think the jury in this type of case should not be asked to fix the date of commencement of the insured's disability. That date has already been determined by the former judgment. Aside from this, the insured is not required to prove, and in this case offered no evidence to establish, any precise date as the beginning of disability. The issue here was whether the disability had continued and was in existence subsequent to January, 1936. The form of verdict was confusing and impossible of adoption.

For the reason first discussed I think the judgment should be reversed and a new trial ordered.